VALENTINE B. CHAMBERLAIN, TREASURER OF THE STATE, *vs.* THE CONNECTICUT CENTRAL RAILROAD COMPANY.

Hartford District, Oct. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

The Connecticut Central Railroad Company, in 1875, under authority of its charter, made a mortgage to the state treasurer of all its estate present and to be acquired, to secure an issue of coupon bonds payable

in 1895, but to become due at the election of the holder six months after default in the payment of the interest coupons. The New York & New England Railroad Company, which owned a connecting road, in 1880 took a lease of the road and all its property, the lease to run until 1895, and in place of paying rent the lessee was to apply the net income from the use of the road to the payment of the interest coupons. Soon after taking the lease the lessee became the owner of all the bonds. Upon a suit brought by the state treasurer, as trustee for the bond-holders, for a foreclosure of the mortgage, upon an alleged default in the payment of the interest coupons, it was held—1. That there had been no default if the net receipts from the road had been sufficient to pay the interest coupons—2. That in accounting for these receipts the New York & New England Railroad Company was bound to account for and apply the net receipts from this road by itself, and had no right to pro-rate them with its receipts upon its own road upon the entire mileage.

And held that the matter was not affected by the lease, since by it the lessee had agreed to do only what as a mortgagee in possession it would have been bound to do.

Also that it did not affect the matter that the lease conveyed all right that the lessor had or might acquire in certain terminal advantages and connecting roads, since the mortgage itself covered future acquired rights, and the lease itself provided for the deducting of the expenses incurred on account of those connections and advantages from the gross earnings of the leased road.

The foreclosure suit was brought by the state treasurer as trustee for the bondholders at the request and for the benefit of the New York & New England Railroad Company, and that company was brought in as a co-defendant. Held that, as that company held all the bonds, it was to be regarded as really the plaintiff, and that the whole question of accounting was to be treated as if it was so.

And the suit having been brought at its request and for its benefit, the company did not stand in a position to take advantage of a provision of the lease for an arbitration in case of any disagreement between the parties.

But it is well settled that such an agreement to submit to arbitration will not be held valid where its effect is to oust the court of jurisdiction.

A mortgagee in possession, whether the possession has been acquired by actual entry or by attornment of tenants, is bound to apply the rents and profits in discharge of the debt and can be compelled to account for them.

And an equitable mortgagee stands in the same position, as does also an assignee of the mortgagee.

[Argued October 8th—decided December 17th, 1886.]

SUIT brought by the plaintiff, as treasurer of the state, and *ex officio* trustee for the holders of certain coupon bonds

of the Connecticut Central Railroad Company, to foreclose a mortgage of the property of the railroad company made to a former treasurer of the state as such trustee. The suit was brought to the Superior Court in Hartford County. After the suit came into court the New York & New England Railroad Company, which owned all the mortgage bonds, was brought in as a party respondent. The case was heard, on a demurrer to the defendant's answer, before *Andrews, J.* Demurrer sustained and a decree of foreclosure passed. Appeal by the defendant. The case will be sufficiently understood from the opinion.

*L. Sperry,* for the appellant.

1. On July 29th, 1875, the Connecticut Central Railroad Company made a mortgage to the treasurer of the state as trustee for the benefit of its bondholders, and issued under it $325,000 of bonds. This mortgage conveyed to the treasurer as trustee all the estate and franchises of the company present and prospective. This suit is brought for a foreclosure of the mortgage, by the state treasurer. He is a nominal party merely, holding the legal title for the benefit of the bondholders. As a question of equity pleading both the trustee and the *cestuis que trust* are necessary parties. *Goddard* v. *Prentice,* 17 Conn., 555; Daniels' Chancery Pl. & Prac., (4th ed.,) 220, and note, 221, 259. It is undoubtedly true, under the terms of the mortgage, and under the Practice Act, that the trustee could maintain an action in his own name. It is also undoubtedly true that if the trustee refuses to act, a single bondholder may maintain an action in his own name for his own benefit and the benefit of others who may wish to join with him. *Alexander* v. *Central Railroad Co.,* 3 Dill., 487; *Sage* v. *The Same,* 93 U. S. R., 412. If it be true that the *cestui que trust* has all his common law rights of action preserved to him, the terms of the mortgage or a code practice to the contrary notwithstanding, it ought to be equally true that the *cestui que trust* will be liable to all equitable common law defenses.

2. In a mortgage obligation the security is incidental to

the debt. An assignment of the debt conveys the security with it. If a mortgagee assign the debt without transferring the security he retains a naked legal title only. He becomes a trustee for the benefit of the holder of the debt. He cannot release the security without rendering himself personally liable to the holder of the debt. The holder of the debt is the only actual party in interest. *Ely* v. *Stannard*, 46 Conn., 124. The New York & New England Railroad Co. have held all the mortgage bonds since about the first of June, 1880, and now hold them all. It appears therefore that this suit of foreclosure is instituted solely for the benefit of that company. That company is a party to the record, and it is the only party having any actual interest as a plaintiff. And the Connecticut Central is the only party having any interest as a defendant. *Merwin* v. *Richardson*, 52 Conn., 223. A suit in the name of a plaintiff having a legal title only is ordinarily open to all of the defenses which could be urged against the actual party in interest.

3. The New York & New England Railroad Company have been in possession of all the mortgaged property since about the first of June, 1880. During all that time they have also been the owners and holders of all the mortgaged bonds. It follows therefore that during all that time they have been mortgagees in possession. It is well-established law in this state that a mortgagee in possession is bound to account in a court of equity for rents and profits. *Kellogg* v. *Rockwell*, 19 Conn., 446; *Harrison* v. *Wyse*, 24 id., 1. They went into possession under a lease. They were therefore lessees in possession. The leasehold property and the mortgage property are identical. They have held the mortgage as long as they have held the lease. In other words, the company present a dual character—lessees and mortgagees. The lessee character was created by agreement of parties. The acquirement of the mortgage bonds by them was a matter over which the Connecticut Central had no control. They come into a court of equity and assert their rights as mortgagees. Upon such a declaration they ought

to be governed in that court by the law applicable to mortgagees. Although both equitable and legal title may be acquired by the same person, a court of equity will not allow the two titles to merge as long as the ends of justice require that they should be kept separate. *Bassett* v. *Mason*, 18 Conn., 137; *Goodwin* v. *Keney*, 47 id., 486. This court has already decided that a mortgagee in possession is still bound to account to any person having an interest in the property, notwithstanding he may also hold possession under the mortgagor by an assignment of the equity. *Harrison* v. *Wyse*, 24 Conn., 1. And he is bound to account even though he enter into possession under an agreement not to account. *Anderson* v. *Lauterman*, 27 Ohio St., 104; *Moore* v. *Degraw*, 1 Halst. Ch., 346. This is the case of a lessee acquiring the mortgage debt while in possession under a lease which reserves no stated rent, but provides in terms that the lessee shall apply the entire income to certain uses, and among the rest the payment of interest. The New York & New England Railroad Company, as lessees and mortgagees in possession, have received the entire income of the mortgaged property. The income so received is more than sufficient to pay the alleged over-due interest, over and above all other charges. They have received more than $500,000. In round numbers, the interest amounts to one fourth of the income. No application of income to the payment of interest has ever been made. No account has ever been rendered by them either as lessees or mortgagees. They come into a court of equity and assert their rights as mortgagees. The defendant asks for an account. Will the court grant it?

4. The plaintiff states by way of demurrer several reasons why an account should not be given. Let us consider those reasons in their order.

(1.) That they are in possession under a lease which covers rights not covered by the mortgage, and that the lease is a separate contract. These statements are true only in part. The leasehold estate and the mortgage estate are identical. The mortgage conveyed all lands, franchises,

" materials, privileges, appurtenances, and property, real and personal, which now belongs or hereafter may be acquired by said company." It is difficult to see how a subsequent lease could convey any more than that. As lessor and lessee the interest of the two parties was the same—to preserve the equity. When the lessee became a mortgagee, which was not contemplated by the lease, the interest of the parties was adverse. It then became of interest to the New York & New England Company to conceal the earnings, or in some other way to depreciate the value of the property, so as to acquire the equity on the mortgage. And the lease is not a separate contract in any such sense as the plaintiff claims. The lease is subsequent to the mortgage, but it relates to the same subject matter. The mortgage relates to certain property, upon which are predicated certain bonds with interest coupons ; the lease relates to the same property, contemplates a large income, which has in fact been realized, and provides for the application of the income to the payment of interest.

(2.) That the lease provides for arbitration and that no arbitration has been had. It is true that the lease provides for arbitration as a final settlement of all differences which may arise. The effect of that provision of the lease, if it has any binding effect, is to oust the court of jurisdiction, and it is therefore void as against public policy. It is hardly worth while to multiply authorities on that point. *Pearl* v. *Harris*, 121 Mass., 390 ; *Tobey* v. *County of Bristol*, 3 Story, 800 ; *Home Ins. Co.* v. *Morse*, 87 U. S. R., 445.

(3.) That the cross-complaint is in the nature of a bill of discovery, but does not contain averments to justify its maintenance. The cross-complaint alleges that the New York & New England Railroad Company are in possession of more than sufficient money, derived from the Connecticut Central, to pay the interest ; that the money accrued under the exclusive management of the New York & New England ; that when received it ought to be applied to certain uses ; that it is mingled with their own money, and is received in a fiduciary capacity ; that all books, vouchers

and accounts are in their exclusive possession and control; and that the Connecticut Central is unable to establish its claim except by an accounting. It is clearly within the rule in equity. It asks for an account so far forth as the same may be necessary to show that the alleged over-due interest has in fact been paid, and it counts upon "matter already in litigation" between the same parties. Story Eq. Pl., (9th ed.,) §§ 398, 399. A suit to foreclose a mortgage given to secure a bond, wherein judgment is asked against the obligor for any deficiency, is subject to a counterclaim of any other cause of action on contract which the obligor had against the plaintiff at the time of the commencement of the suit. *Hunt* v. *Chapman*, 51 N. York, 555; *Allen* v. *Maddox*, 40 Iowa, 124; *Goodwin* v. *Keney*, 49 Conn., 563.

(4.) That the cross-complaint attempts to shift the burden of proof. But in a court of equity both parties are reciprocally required to furnish and use such evidence as the court may need. The plaintiff must carry the burden of establishing his bill; but that being done, the defendant must carry the burden of furnishing to the court such evidence, pertinent to the issue, as lies peculiarly within his knowledge.

(5.) That the bonds and coupons being negotiable are liable to be transferred. It is sufficient for the purpose of this case to know that they have not been transferred. The judgment appealed from shows that. The cross-complaint claims that they have been paid. If that be true the subsequent transfer of the over-due coupons would not affect the defense. And this suit has to do with over-due coupons only.

(6.) That the lease contemplates the operation of an entire road between Hartford and Springfield, and that collateral issues are thereby brought into the case. The lease does not in terms pretend to convey anything in addition to what had been previously conveyed by the mortgage, as before stated. The operated road has been more extended than the leased road. But, as alleged in the cross-complaint, it has all been operated on account of the Connecticut Cen-

tral, producing a gross income. And it is conceded in it that the sums paid for track rentals and terminal facilities are proper charges against that gross income in determining the net income applicable to interest and dividends. It is no defense to a bill in equity praying for an account of a particular stage line, to say that the line in question has been operated as part of a more extended line, and that the accounts are in the hands of agents and have never been adjusted. *Newton* v. *Thayer*, 17 Pick., 129. It is no defense that the accounts are intermingled with those of third parties. *Butler* v. *Cromwell Iron Co.*, 22 Conn., 359.

*S. E. Baldwin*, for the appellee.

1. This suit is not the place for an accounting under the lease. This is a simple action for a foreclosure of certain real estate in Connecticut, brought by the mortgagee, who holds in trust for those who may, from time to time, be owners of certain negotiable bonds and coupons. They may belong to *A* to-day and to *B* to-morrow, and the plaintiff's accountability to the owners will change as often. The present ownership of these bonds is in a railroad company, which is also in possession of the mortgaged property, and of certain other property in Massachusetts, under a lease made five years after the mortgage. The lease contains full provisions for the determination of all rights under it. It contemplates the operation of the Connecticut part of the road, which was all that was mortgaged, and the Massachusetts part of the road, as an entirety. The rent payable to the Springfield and New London road for the Massachusetts end of the line, is to be taken out of the earnings of the entire line from Springfield to Hartford, and the same is true of the rent for the use of the Hartford depot and the tracks from East Hartford to Hartford, and of the Rockville depot. The plaintiff has nothing to do with the lease. His title is paramount to it. The equitable rights of the bond-holders are paramount to it, and are expressly reserved in the covenants of the lease. The lease requires no accounting except to the state. In lieu of any

rendition of accounts to the lessor, it provides that the lessor may itself have free access at all times to the lessee's books, papers and accounts relating in any manner to the operation of the leased property, and fully examine the same. Should the lessee fail to state or apply the net earnings as required by the lease, the lessor may, after sixty days' notice, re-enter, and if the parties "differ as to whether any act or payment ought to be done or made under the provisions of this lease, then such matter of difference shall be submitted to and fairly decided by such person as arbitrator as the parties may agree upon," or a judge of this court appoint. The Connecticut Central Railroad Company has exercised its right under the lease of inspecting the books of account of the New York & New England Railroad Company. It did this through a committee, in 1884, and does not claim that it has ever given notice that it claimed any default under the lease, or asked to have any matter of difference submitted to arbitration. The answer and cross-complaint are attempts to substitute for an investigation as to the execution of one contract between *A* and *B*, an investigation into the execution of another contract between *B* and *C*. Suppose that a testamentary trustee for a married woman invests in a mortgage on one of a block of two houses; that the owner afterwards turns the houses into one, and leases them as such to the married woman; and that she fails to pay the rent reserved. If her trustee forecloses the mortgage, can the mortgagor call for an accounting under the lease? And still less is an account demandable here, where the mortgage security is a negotiable one, which is designed to pass from hand to hand in the market like money. It is certainly no answer to the plaintiff's complaint that his *cestuis que trust* owe an independent and unliquidated claim and ought to render an account of it. And so far as the cross-complaint is concerned, it can have no wider scope than a cross-bill in equity, but must be confined to "matter in question in the original complaint," even if it makes new parties. Practice Book, p. 15, sec. 8; id. p. 18, sec. 1; Public Acts of 1877,

p. 170, chap. 45; Story Eq. Pleadings, 401; *Harrall* v. *Leverty*, 50 Conn., 46, 63. An accounting for an unliquidated demand for breach of covenant under a collateral contract, embracing different property, executed subsequently to the mortgage, and to which the plaintiff is no party, is not a matter brought in question by the complaint. An accounting would be useless unless it can be made the basis of a set-off. But there can be no set-off save of mutual debts. Gen. Statutes, 424, sec. 13; Practice Book, p. 2, sec. 5; *Gaylord* v. *Couch*, 5 Day, 223; *Fitch* v. *Gates*, 39 Conn., 369; *Meeker* v. *Thompson*, 43 id., 80. And no set-off of unliquidated claims. Waterman on Set-off, §§ 297, 298; *Jennings* v. *Webster*, 8 Paige, 503; *Knox* v. *Protection Ins. Co.*, 9 Conn., 433; *New Haven Pipe Co.* v. *Work*, 44 id., 230, 237; *Drew* v. *Towle*, 27 N. Hamp., 412; *Duncan* v. *Lyon*, 3 Johns. Ch., 357. In *Goodwin* v. *Keny*, 49 Conn., 563, there was an admitted and definite claim of the sole owner of the equity against the sole plaintiff, who was insolvent.

2. Even if an account could be demanded in this action, the account in fact demanded was plainly unreasonable. It asks for every item, explained in minute detail, of the business of four years, over a railroad in two states. The lease does not require any such account to be kept. No railroad's books contain such entries. In order to avoid the necessity of any such explanations, the lease guarantees free access to the lessee's original books, papers, way-bills, contracts, &c. The lessee accepted the lease, knowing that it was under this liability and no other. It cannot be supposed that under these circumstances it has the means to state such an interminable account as is called for, even if it were bound to render any statement at all. And the account asked for is of the whole line from Springfield to Hartford, as an entirety, though the mortgage covers only a separate part of it. The lessee has had ample opportunity since 1880 to re-enter, or ask an arbitration, or bring a bill to redeem, setting up the receipt of net earnings under the lease as payment. Either one of these methods would be

the proper way to test the claim that, although the entire road from Hartford to Springfield is to be run as one line, and the operating expenses and rentals for each end charged in gross against the earnings from the whole, still a high "local" rate should be charged on all freight transported to or from any station on the Connecticut Central road from or to any station on the New York & New England road, instead of a *pro rata* freight, which the lessee claims the right under the lease to charge. This is a device to delay a foreclosure, which was not brought until nearly six years after a default. When the New York & New England road bought their bonds, they bore three defaulted coupons, of April 1st, 1879, October 1st, 1879, and April 1st, 1880. It is not surprising that the Connecticut Central continued in default under the lease, as it was before the lease; and an account for the time from 1880 to 1885 would have no more relevancy to this case, than an account for the time from 1878 to 1880.

LOOMIS, J. This is a complaint in the name of the state treasurer against the Connecticut Central Railroad Company for the foreclosure of a mortgage executed by the latter upon all their estate, present and prospective, to secure an intended issue of bonds, which were afterwards in fact issued to the amount of $325,000, payable in 1895, or at the election of the holder at any earlier time after six months default on the interest coupons annexed to the bonds. The interest was paid to October 1st, 1878, and coupons to the amount of $136,500 have since matured, and are in default, unless the defence set up is true and sufficient.

Ordinarily the contention in such an action is reduced to narrow limits and can easily be determined, but here the proceedings are much more complicated.

The New York & New England Railroad Company, which, during the pendency of the action, was upon application of the plaintiff made a co-defendant, are the owners and holders of all the bonds and coupons constituting the mortgage debt, and this suit was instituted by the plaintiff

as treasurer of the state, by request of the New York & New England Railroad Company for their sole benefit; and the latter, since June 1st, 1880, have had exclusive possession of all the property mortgaged, under an agreement contained in a lease, reserving no rent but stipulating that the net income derived from the use of the property should be applied to the payment of the identical coupons which in this suit are alleged to be due and unpaid.

Upon these facts the Connecticut Central Railroad Company insist that the real plaintiff in the suit is the New York & New England Railroad Company, and upon this assumption the answer and cross-complaint, as contained in the record, were filed, which in substance contain the single defense, that the New York & New England Railroad Company is bound to render an account in this action of its receipts and expenses while in possession since June 1st, 1880, and that on a fair and just accounting it would appear that the net earnings of the property have been enough to pay, and in equity have paid, all the defaulted coupons upon which the complaint for foreclosure is based. On demurrer to the answer and cross-complaint the trial court rendered judgment for the plaintiff and passed an absolute decree of foreclosure.

The main question presented by the appeal for review in this court, is, whether the defense referred to was sufficient. We think it was, and that the technical objections upon which the demurrer was based ought not to prevail.

The objections seem to assume that the proposed defense could not be entertained without improperly shifting both the parties and the issues in the suit. But reference to the well-settled principles of equity, applicable to the subject matter, will show that these objections have no foundation. It is true that the mortgage sought to be foreclosed was to the treasurer of the state, (as a mere trustee,) yet in effect it was a contract between the Connecticut Central Railroad Company and the holders of the bonds, and in equity the case stands precisely as it would had the present bond-

holders been named in the deed as mortgagees. Jones on Railroad Securities, § 68; *Butler* v. *Rahm*, 46 Md., 541.

It is difficult to conceive how the New York & New England Railroad Company could have been regarded as a stranger to the suit, in view especially of the distinct admission contained in the pleadings, that it owns, and has owned since June 1, 1880, all the bonds and coupons secured by the mortgage, and that the suit was brought by its request and for its benefit.

But it is said that these bonds and coupons were negotiable and that the state treasurer as trustee must account to one bond-holder to-day, and to another to-morrow, in case of a transfer. This is true, and it is easy to suppose a very complicated case, but such is not this case, because the bonds have not been negotiated and there is no divided interest or ownership.

The fundamental doctrine of equity is, that the owner of the debt is the real mortgagee; the debt is the principal thing; the conveyance is a mere incident; it therefore follows that an assignment of the debt carries the security along with it and that an extinguishment of the debt is an equitable determination of the estate conveyed. These principles are equally applicable whether the debt is represented by negotiable or non-negotiable securities. We conclude, therefore, that in the case at bar there was no objection to the defense on account of the parties; the defense was aimed at the real and only party in interest, and so far was legitimate.

But it is said that an issue was presented foreign to the matter of the complaint. The matter in question was, whether a foreclosure ought or ought not to take place. It ought not to take place if there was no debt due. This the defendant attempted to show by offering to prove that all the matured coupons had been paid. The mode of payment was immaterial, whether in cash, or in rents and profits received by the owners of the mortgage debt and agreed to be applied in payment of it.

The accounting prayed for was in aid of the defense, and

was based on a duty incumbent upon the New York & New England Railroad Company under the circumstances to render it. The doctrine is elementary that a mortgagee in possession, whether acquired by actual entry or by attornment of the tenants, will be subject, not only to the equity of redemption, but to the duty of applying the rents and profits in discharge of the debt, and rendering an account of their receipt and application. *Saunders* v. *Frost*, 5 Pick., 260 ; *Moore* v. *Cable*, 1 Johns. Ch., 385. · And an equitable mortgagee is as liable to account as a legal mortgagee. *Brayton* v. *Jones*, 5 Wis., 117.. An assignee of the mortgagee in possession stands in the place of his assignor in respect to the account. 2 Jones on Mortgages, § 1118.

But it is further said, that in this case the New York and New England Railroad Company were in possession under a lease from the defendant, and upon this fact a threefold objection is based, namely—that the lease is a separate and independent contract ; that it covers property not included in the mortgage ; and that it provides for an arbitration in case of difference, and no arbitration has been had or asked for.

If we may adopt somewhat the manner of a pleader, our general reply would be that the first two parts of the objection are not true in any such sense as the argument for the plaintiff assumes, and that the last is insufficient.

The contract of lease, instead of being entirely independent, has an intimate connection with the subject matter of the suit, in that it provides for the application of the net income of the leased property first of all to pay the coupons claimed to be in default.;

The lease, too, took effect June 1st, 1880, and that is also the alleged date of the purchase of the bonds in question. The latter by their terms all become due in 1895—the same year the lease is to terminate. This is quite suggestive that the purchase of the bonds and the taking of the lease were parts of one and the same scheme. But we do not rely upon this last suggestion to show that the lease is not a separate contract in such a sense as the demurrer assumes.

The case may well stand on this proposition, that if the possession and use of mortgaged premises by the owner of the mortgage debt without any agreement at all respecting the matter, imperatively demands an accounting and the application of rents and profits to the payment of the debt, the duty surely can be no less on the party who has agreed to do that very thing.

Then, as to the point that the lease covers more property than the mortgage, it has much less truth than the first. The leasehold estate and the mortgage estate are substantially identical. The mortgage conveyed all lands, franchises, " materials, privileges, appurtenances and property, real and personal, which now belongs to or hereafter may be acquired by said company." The difficulty of conveying anything more than this by any subsequent lease is quite apparent without further argument.

The color of a foundation which this point has to rest upon is the paragraph in the lease which reads " together with any right it " (the defendant) " has or may hereafter acquire to use in any manner " certain terminal facilities and connecting roads which are named. The language is that of a mere quit-claim; no rights are described as existing, and if they did exist the sweeping language of the mortgage would seem broad enough to include them. There may have been some remnant of a lease or license for the defendant to use the connecting roads referred to, but whatever may be the right referred to, it furnishes no obstacle at all to accounting, for the lease expressly provides for deducting from the gross earnings of the entire line operated solely on account of the Connecticut Central, whatever is paid on account of those connections and advantages, and there can be no uncertainty, on that account, in ascertaining the net income to be applied on the mortgage debt. It may be well here to add that the directions contained in the lease respecting the mode of ascertaining the amount, if any, to be applied on the mortgage, should be followed.

Another objection attempted to be drawn from the lease is, that as it provides for arbitration in case of a difference

between the parties, the defendant is restricted to that remedy alone. But the New York & New England Railroad Company, having caused this suit to be instituted for their sole benefit, is in no position to make such an objection if it was otherwise good, for having invoked the jurisdiction of a court of equity to pass upon their allegations, they cannot limit that jurisdiction till it has determined all the equities between the parties relative to the subject matter.

Moreover, it seems to be well settled that an agreement to submit to arbitration will not be held valid, either in law or equity, when its effect is to oust the court of jurisdiction. *Wood* v. *Humphrey*, 114 Mass., 185; *Tobey* v. *County of Bristol*, 3 Story, 300; *Thompson* v. *Charnock*, 8 T. R., 139; *Jones* v. *St. John's College*, L. R., 6 Q. B., 115; Russell on Arbitration, 61–63, and cases there cited.

Our reasoning has brought us to the conclusion that it is the duty of the New York & New England Railroad Company to account in this action, and that the defense founded upon the anticipated results of such accounting is one the defendant mortgagor should be allowed to make.

The further objection, that the account demanded is in some of its details unreasonable, and that no railroad company's books contain such items, we do not deem it necessary to pass upon. There is nothing on record to show whether this point is well founded or not, and in the brief of counsel it is stated in the most general terms without argument. We think therefore it is better to leave the details to the trial court, that can act upon fuller information and argument. It is quite obvious that the details will depend much upon what the plaintiffs are willing to disclose. If they refuse or neglect to give, as the answer and cross-complaint allege, an account of the actual freight, tolls and income of the Connecticut Central Railroad Company, and insist on pro-rating all such items with what they receive for the same things upon the entire mileage of their own road, then many of the details asked for would become both reasonable and necessary. We observe near the conclusion of the cross-complaint and in one place in the answer

that the demand for special details referred to is subject to a qualification in these words—"So far forth as the same may be necessary to show that the New York & New England Railroad Company * * * have received, previous to the commencement of this suit, sufficient moneys belonging to the Connecticut Central Railroad Company to pay said alleged over-due interest, over and above all other lawful charges against the same." Applying this qualification to all the details asked for, there is surely nothing unreasonable in the account demanded.

There was error in the judgment complained of, and a new trial is ordered.

In this opinion the other judges concurred.