ANNA P. MILLS v. THE SWORDS LUMBER COMPANY.

New Haven & Fairfield Cos., April T., 1893. ANDREWS, C. J., CAR-
PENTER, TORRANCE, FENN and BALDWIN, Js.

Where a contract, especially of suretyship, is obtained from one who is
under such pressure as to be deprived of free agency, equity will not
only refuse to aid the party claiming under it, but will actively aid the
other party by declaring the contract void.

The declaration of a party that he intends to do a certain act or pursue a
certain course of conduct, is always admissible where the issue is
whether the party did that act or pursued that course of conduct.

But where, in a suit to set aside a mortgage given by a wife for her husband's
debt, to save him from arrest for fraudulent representations in con-
tracting the debt, the issue was whether or not the agent of the defend-
ant had used threats to have the husband arrested to induce the wife
to execute the mortgage, it was held that the declaration of the agent,

not made in the wife's presence, that if the wife did not execute the
mortgage he should have the husband arrested for false representations,
as to which intention there was no question, was not admissible, be-
cause not falling within the issue whether he used threats to induce
the wife to execute the mortgage, and entirely consistent with an ex-
pectation on his part that the wife would do it of her own choice.

[Argued April 20th—decided May 4th, 1893.]

SUIT to set aside a note and mortgage claimed to have
been obtained of the plaintiff by duress of threats; brought
to the Superior Court in Fairfield County. The defendant
demurred to the complaint, which demurrer the court over-
ruled. The case was then heard on its merits before *J. M.
Hall, J.* Facts found and decree passed setting aside the
note and mortgage, and appeal to this court by the defend-
ant. The case is stated in the opinion.

*S. Judson, Jr.,* with whom was *C. S. Canfield,* for the ap-
pellant.

1. While it is well settled that " fear of *unlawful* imprison-
ment " is ground for avoiding one's acts, where performed
under a threat of immediate execution, and with the appar-
ent power to execute the threat, yet it is an equally well
settled doctrine that a threat of *legal* imprisonment, un-
less there is an abuse of lawful process, will not constitute
" duress by threats," and the authorities are uniform in this
respect.   6 Am. & Eng. Encyl. of Law, 64 ; 1 Parsons on
Cont., 444 ; 1 Chitty on Cont., 270 ; *Eddy* v. *Herrin,* 17
Maine, 338 ; *Harmon* v. *Harmon,* 61 id., 227 ; *Alexander* v.
*Pierce,* 10 N. Hamp., 494 ; *Foss* v. *Hildreth,* 10 Allen, 76 ;
*Knapp* v. *Hyde,* 60 Barb., 80 ; *Foshay* v. *Ferguson,* 5 Hill,
154 ; *Fulton* v. *Hood,* 34 Penn. St., 365 ; *Moore* v. *Adams,* 8
Ohio, 373 ; *Smillie* v. *Smith,* 32 N. Jer. Eq., 51 ; *Davis* v.
*Luster,* 64 Mo., 43 ; *Flanigan* v. *City of Minneapolis,* 36
Minn., 406 ; *Bush* v. *Brown,* 49 Ind., 573 ; *Snyder* v. *Braden,*
58 id., 143 ; *Adams* v. *Stringer,* 78 id., 175 ; *Shattuck* v.
*Watson,* 53 Ark., 147.

2. The declaration of Haight, not made to the plaintiff, nor
communicated to her, that he should arrest Mills if his wife

did not give security for his indebtedness, was wholly inadmissible. The issue was whether he had threatened the plaintiff. This declaration cannot be made a threat to her. And it did not constitute any ground of inference that he made such a threat. *Taylor* v. *Jaques*, 106 Mass., 291; *Allen* v. *Addington*, 7 Wend., 1; *Edwards* v. *Warner*, 35 Conn., 517.

3. The conclusion of the trial judge that *duress perminas* was established, is stated to be based upon the "foregoing facts and circumstances detailed in the finding." The finding purports to, and does, set forth all the material facts upon which the conclusion of duress is based. Such conclusion can be reviewed. *Broome* v. *Beers*, 6 Conn., 199, 208; *Nichols* v. *McCarthy*, 53 id., 299, 324; *Plumb* v. *Mallett*, 60 id., 352.

*J. C. Chamberlain* and *N. W. Bishop*, for the appellee.

ANDREWS, C. J. Two errors are urged against the judgment in this case; one, that the demurrer to the complaint was overruled; the other that certain evidence was improperly admitted.

It is insisted that the facts averred in the complaint do not constitute "duress of threats," and therefore that the complaint fails to state a cause of action. It is unnecessary to discuss what constitutes duress of threats. If the complaint contains the averment of acts or facts which being proved would entitle the plaintiff to the relief prayed for, then it is sufficient, and the demurrer was properly overruled.

It is well established that where a contract—especially if it is a contract of suretyship—is obtained from one who is under pressure to such an extent as to be deprived of free agency, equity will not only refuse to aid the party in whose favor such a contract is made, but will actively give assistance in favor of the oppressed party by declaring the contract void. *Town of Sharon* v. *Gager*, 46 Conn., 189; *McMahon* v. *Smith*, 47 id., 221; *Taylor* v. *Atwood*, id., 498;

*Nichols* v. *McCarthy*, 53 id., 299 ; *Rau* v. *Van Zedlitz*, 132 Mass., 164 ; *Bryant* v. *Peck & Whipple Co.*, 154 id., 460 ; *Schoener* v. *Lissauer*, 107 N. York, 111 ; *Fisher* v. *Bishop*, 108 id., 25 ; *Barrett* v. *Weber*, 125 id., 18 ; *Parker* v. *Lancaster*, 84 Maine, 512 ; *Foley* v. *Greene*, 14 R. Isl., 618 ; *Williams* v. *Bailey*, L. R., 1 H. L. Cas., 200 ; *Davies* v. *London & Provincial Marine Ins. Co.*, 8 Ch. Div., 469, 477.

We think there is nothing in the reasons for demurrer on account of which the complaint should have been held insufficient.

It appears from the finding of facts that the plaintiff is the wife of Edward P. Mills, that on the 12th day of December, 1891, one Haight, the agent of the defendant, had procured a writ of attachment in favor of the defendant commanding the sheriff to attach the body of said Edward for certain fraudulent representations alleged therein to have been made by him ; that on said day Haight went to the house of the plaintiff, accompanied by a sheriff in whose hands the writ had been placed for service ; that when Haight and the sheriff arrived at the house the plaintiff was not at home ; that her husband was at the house and the sheriff proceeded to serve the writ by reading it to him ; that Haight said to the husband that unless security was furnished for the debt he would be taken to jail ; that the husband asked Haight and the sheriff to wait till the plaintiff returned, and offered to secure $1,000 of the claim by a note and second mortgage on her property ; that Haight thereupon went to the office of an attorney and had a note drawn for $1,000, and a mortgage on the property of the plaintiff to secure the same, leaving the husband under arrest in charge of the sheriff, and that he returned to the house with these papers, bringing a notary with him to take her acknowledgment. It further appears that when the plaintiff came home she was informed that the sheriff was there after her husband and that he would be arrested and put in jail unless she signed the note and mortgage, but she refused to do so. Haight and the plaintiff, with her husband and other members of the family, discussed the matter of executing the mortgage for the space of about

half an hour, during which time the plaintiff was urged by Haight to execute the mortgage to secure the debt and was informed by Haight that unless the security was furnished her husband would be arrested for his alleged liability arising from the false representations. The plaintiff became considerably agitated during this discussion over the threatened arrest of her husband, being in tears the greater part of the time, and became very nervous and excited, and was finally so moved by the threats that against her intention and will she executed the mortgage without fully understanding its nature and effect, and believing it was designed and intended to enable her husband to proceed with certain work on which he was then engaged and for which the defendant would continue to furnish him building material. After the signing of the note and mortgage by the plaintiff and by her husband she was asked by the magistrate if the same was her free act and deed, to which she replied that it was not. Whereupon the magistrate informed her that if it was not he could not take her acknowledgment, and proceeded to depart from the house. He was called back by Haight, and after further discussion and threats of imprisonment of her husband the plaintiff was again inquired of by the magistrate if it was her free act and deed, to which she made no reply. Haight told the magistrate it was all right and he affixed his signature, and with Haight left the house.

Upon the trial a witness for the plaintiff testified that while the subject of the execution of the papers was being discussed at the house of the plaintiff, as is above set forth, Haight came into a room where the witness was, and while there, out of the presence of the plaintiff, stated, in response to a question by the witness as to what he intended to do in the matter of arresting said Mills,—"that unless the plaintiff executed the mortgage he should cause her husband to be arrested for having made false representations." It appeared that this answer was not communicated to the plaintiff. The defendant objected to the evidence but the court admitted it. This ruling is the other error claimed by the defendant to have been committed.

The contention of the plaintiff at the trial was, that Haight procured the plaintiff to execute the note and mortgage in question by holding up before her the idea that unless she did so her husband would be imprisoned; and that this could be done by acts as well as by words. It was in support of this contention that the evidence objected to was offered. The declaration of a party that he intends to do a certain act, or pursue a certain course of conduct, is always admissible when the issue is whether or not the party making the declaration did the act or followed the course of conduct, because the declaration proves that those feelings exist which prompt the act or the conduct. Whenever the words uttered by any person are testified to in court they ought to be understood by the trier in that sense in which they were intended to be understood by those who heard them. To ascertain such sense the circumstances under which they were spoken must be considered. The time, the place, the surroundings, the motives and interests of the speaker, as well as his acts and conduct at and near the time, in respect to the matter which was the subject of the words, must all be taken into account. It is true that many times a fact which taken alone seems wholly irrelevant becomes from its relation to the other facts in the case important and obviously relevant, because the single fact when connected with the other facts in the case proves or renders highly probable the existence of the main fact in issue. Counsel for the plaintiff argue that when the answer of Haight to the witness is examined in the light of the circumstances detailed in the finding, it has its significance not so much in the words that " he should cause the husband to be imprisoned " as in the words " unless the plaintiff executed the mortgage," and indicates a state of feeling on his part which would be likely to prompt him to do the very things which the plaintiff says he did do; and they say that in such significance the words are a declaration by Haight that he is displaying before the plaintiff the idea of her husband being sent to jail as an alternative to her refusal to execute the mortgage; and that so the declaration was admissible. The rules of law invoked

by the plaintiff are clearly correct. Stephen's Digest of Evidence, art. 1; *New Milford* v. *Sherman*, 21 Conn., 101; *State* v. *Alford*, 31 id., 40; *Bartram* v. *Stone*, id., 157.

The fallacy is that the fact does not fall within the rule. Haight confessedly intended to send her husband to jail unless some security was furnished for his debt. There was no secret about that intent. That intent was not in issue. A declaration of that intent was a very different thing from a declaration that he intended to use threats to induce the plaintiff to sign the mortgage. The declaration by Haight, as testified to, was entirely consistent with an expectation on his part that she would voluntarily sign the mortgage or be persuaded to do so by her husband or by the witness to whom the declaration was made. We are not able to perceive any fair interpretation which can be placed on the words of Haight by which they can be made to bear the significance attributed to them by the counsel. The claim that the declaration was admissible as a part of the *res gestœ* was not pressed. Obviously it could not be sustained. There was no fact which it served to illustrate or explain.

There is error and a new trial is granted.

In this opinion the other judges concurred.