INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUF-
FEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
LOCAL 145 *v.* IRVING SHAPIRO ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

[redacted]

Argued May 3—decided June 26, 1951

*Theodore I. Koskoff,* with whom was *Sidney Shapiro,* for the appellants (defendants).

*William S. Gordon, Jr.,* with whom was *Mary C. Fitzgerald,* for the appellee (plaintiff).

O'Sullivan, J.  Pursuant to § 8160 of the General Statutes, the plaintiff, hereinafter called the union, applied to the Superior Court for an order confirming two arbitration awards involving the union and the defendants.  The latter were operating as a partnership under the name of Purity Food Company.  We shall refer to them as the company.  The court granted the application, and from the judgment entered thereon the company has appealed.

The court found the following unchallenged facts: On October 28, 1947, after a request by the union for recognition had been denied, a picket line was established in front of the company's premises.  By midday, the company receded from its former position by agreeing to recognize the union.  The picketing immediately ceased and the employees returned to their work. Shortly thereafter, the parties entered into negotiations which culminated on November 26, 1947, in a collective bargaining contract for the terms of two years.  Under article 21 each party reserved "the right to reopen this contract as pertaining to wages and hours as of October 16, 1948."  Article 20 recited: "It is agreed that should any charge of violation of this agreement or any charge of discrimination or any other grievance or dispute arise between the parties hereto an attempt shall be made between the parties to settle such controversy amicably. In the event that such controversy cannot be settled amicably, same shall be referred to the State Board of Mediation and Arbitration at the request of either party.  The decision of said Board shall be final and binding upon both parties."

For almost a year and a half after the contract was executed, the parties dealt with each other in conform-

ity with its provisions. It was not until April, 1949, during the course of a hearing before the state board of labor relations, that the company, for the first time, questioned the validity of the contract. Its contention then was that it had executed the instrument while under duress. After hearing evidence on the matter, the labor board ruled that the claim was without merit. The company did not appeal from that decision.

During the summer of the preceding year, namely, on August 11, 1948, the union had notified the company that it was exercising its right under article 21 to re-open the contract for the purpose of revising the schedules of wages and hours. Because an agreement thereon could not be reached, the union, acting under the provisions of article 20, submitted the controversy on May 25, 1949, to the state board of mediation and arbitration, hereinafter called the board. At the same time, the union submitted another dispute arising out of article 2. We shall ignore the latter since it raises no legal issue which our discussion of the former does not cover.

The board set a hearing for July 26, 1949. The parties were given proper notice and appeared at the designated time and place. At the very outset, the company attacked the legality of the proceeding, again asserting that, as it had been compelled to sign under duress, it would not be bound by the contract. Confronted by this challenge of its power, the board decided to recess. It subsequently canceled a further hearing, set for August 24, since it was in doubt as to its authority to act. This doubt having been later removed, the board notified the parties that the proceedings would be resumed on October 13. The company replied that it saw no point in any such resumption in view of its previously stated position. The board, however, advised the company that the hearing would be

held as scheduled. The union's representatives were present when the board convened but those of the company failed to appear. The board received evidence, submitted solely by the union, first upon the validity of the contract and then upon the two submissions. On November 15, the board made its awards, mailing them to each of the parties and filing copies with the city clerk of Bridgeport.

By one award the board revised the schedule of wages upward, making the increases retroactive to October 16, 1948, and by the other, it held that the company had violated article 2. On January 3, 1950, the union applied to the Superior Court for an order to confirm the awards. Thereafter, the company filed an answer raising the question of their validity, and by a counterclaim it sought to have them declared to be of no legal effect. The court found all the issues for the union and rendered judgment confirming the awards.

The first claim made by the company is that the board was without authority to act until the union had obtained an order of the Superior Court compelling the company to proceed. The point of the argument is that, when the company refused to take part in the proceedings on the ground that duress had been practiced upon it, arbitration was legally impossible until the validity of the contract had first been judicially established by the union. The claim has its source in § 8153 of the General Statutes.[1] The company's posi-

---

[1] Sec. 8153. APPLICATION TO SUPERIOR COURT. A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court of the county in which one of the parties resides or, in a controversy concerning land, in the county in which the land is situated or, when said court shall not be in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. Such application shall be by writ of summons and complaint, served in the manner provided by law. . . . The parties shall be considered as at issue on the allega-

tion is sound only if the provisions of the statute are mandatory.

Prior to 1929 arbitration had been described as a desirable method of avoiding the formalities, delay, expense and vexation of ordinary litigation. *In re Curtis-Castle Arbitration,* 64 Conn. 501, 511, 30 A. 769. It is true that, from the earliest times, the validity of agreements to arbitrate existing disputes was upheld. 1 Swift's Digest 463 et seq.; 3 Blackstone's Commentaries 16, 17. The effectiveness of such agreements, however, was greatly circumscribed, for, unless the submission was made a rule of court, it was revocable at any time before an award had been made. *First Ecclesiastical Society* v. *Besse,* 98 Conn. 616, 621, 119 A. 903; 1 Swift's Digest 465. The revocation, to be sure, was deemed to be a violation of the agreement, but the injured party was without a practical remedy. He could not obtain specific performance; 6 Corbin, Contracts, p. 751; and he was entitled at law to no more than nominal damages for the breach; Restatement, 2 Contracts § 550, comment a; or, at most, the expenses to which he was put in preparing for the arbitration. 1 Swift's Digest 465. Worse still was the status of agreements to arbitrate disputes which had not yet arisen. They found no favor with the courts. They were declared invalid. *Chamberlain* v. *Connecticut C. R. Co.,* 54 Conn. 472, 487, 9 A. 244; but see *Hall* v. *Norwalk Fire Ins. Co.,* 57 Conn. 105, 114, 17 A. 356.

In 1929 the General Assembly eliminated the weakness inherent in written agreements to arbitrate existing disputes and removed from those to arbitrate future

tions of the complaint unless the defendant shall file answer thereto within five days from the return day, and the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the same, according to the rights of the parties.

disputes the taint of illegality with which judicial fiat had previously marked them. Public Acts, 1929, c. 65 (Rev. 1949, c. 398). By virtue of this chapter, the arbitration clause of the contract between the union and the company became "valid, irrevocable and enforceable," unless, as the statute further provides, a sufficient cause existed at law or in equity for the avoidance of contracts generally. General Statutes § 8151. Duress would be such cause. *Mills* v. *Swords Lumber Co.*, 63 Conn. 103, 105, 26 A. 689. Thus, the statute expressly reserved to the company the right to attack the validity of the contract and, we add, the company was entitled to a judicial determination of that question. *Colt's Industrial Union* v. *Colt's Mfg. Co.*, 137 Conn. 305, 307, 77 A. 2d 301. We note, parenthetically, that the board undertook to pass upon this question. In doing so, it went beyond its authority. This transgression, however, had no effect upon the awards which it legally could make.

When the company refused to take part in the arbitration, the union could have applied to the Superior Court for an order compelling the company to participate. General Statutes § 8153. Had the union done so and had the company then raised the issue, the court would have passed upon the validity of the contract. The union was under no obligation, however, to pursue that course. The statute is not stated in mandatory terms. It merely provides that the willing party "may" apply to the court. *Miller* v. *Phoenix State Bank & Trust Co.*, 138 Conn. 12, 16, 81 A. 2d 444. If he elects not to do so, he may still present his case to the arbitrators, and, if they comply with the requirements of § 8156 relating to notice, they may hear evidence and, as § 8157 expressly provides, make their award thereon, even though the other party refuses to appear.

Occasions may arise when application to the court

must be made under § 8153 if the arbitration is to proceed. For example, it may be necessary to compel the unwilling party to perform an essential affirmative act, such as to name an arbitrator. That situation did not prevail here. The parties had already selected the board, and while the record does not disclose the manner by which its personnel was determined, no question has been raised on that score. See General Statutes, Sup. 1949, § 603a.

When the board undertook to hear the controversy notwithstanding the union's failure to invoke the statute, the company had an opportunity to take some affirmative step on its own behalf, if it desired to test the validity of the contract prior to a hearing on the submissions. Thus, it might have instituted an action to have the contract declared invalid and might have sought a restraining order until an adjudication had been had thereon. It chose not to do so. Or, it could have appeared before the board and defended on the merits of the submissions after first reserving, as in fact it did, the right later to attack the contract before a judicial tribunal should the awards be adverse. In refusing to defend, it acted at its peril and is now confronted by a dilemma of its own creation. "[I]f a party contests the jurisdiction of the arbitrators, and withdraws; or, if he never appears for that reason; he may be caught in this situation: he may lose in his defense to the proceedings to enforce the award or in his direct proceedings to vacate the award; the jurisdiction of the arbitrators may be sustained against his objection. In such case, he will not have been heard, and will have no further opportunity to be heard, upon the merits of his case." Sturges, Commercial Arbitrations & Awards, p. 449.

Nor is it of any moment that the board reached its conclusion on ex parte evidence. Sturges, op. cit., p. 442. This was permitted even under the common law.

*Caldwell* v. *Caldwell,* 121 Ala. 598, 601, 25 So. 825; *Couch* v. *Harrison,* 68 Ark. 580, 583, 60 S. W. 957; *Whitlock* v. *Redford,* 82 Ky. 390, 393; *Sanborn* v. *Paul,* 60 Me. 325, 327; *Gowen* v. *Pierson,* 166 Pa. 258, 263, 31 A. 83. The statute codifies the former rule. "If any party shall fail to appear before the arbitrators . . . after reasonable notice, the arbitrators . . . may nevertheless proceed to hear and determine the controversy upon the evidence which shall be produced before them." General Statutes § 8157.

The method pursued by the union, however, did not and could not preclude the company from the right to a judicial determination of its basic claim that the contract was invalid. As previously pointed out, the company could have commenced an independent action prior to the hearing to resolve the question. Further, it might have applied to the court to vacate the award; General Statutes § 8161; or it was privileged to raise the issue in the instant application. Its right to a hearing before the court has not been violated. Until an adjudication is had, an award by arbitrators appointed under a contract executed through duress may be challenged whenever it is relied upon as a source of rights and duties. *Finsilver, Still & Moss* v. *Goldberg, Maas & Co.,* 253 N. Y. 382, 391, 171 N. E. 579. Indeed, this is exactly what the company did. It filed a defense raising the question of the validity of the contract and, by counterclaim, it sought to vacate the awards. That the court passed upon the issue of duress after, instead of before, the board determined the two submissions affords the company no valid reason to complain. In spite of our conclusions, we are constrained to observe that, in a situation like that at bar, orderly procedure will better be served by first disposing of legal questions addressed to the authority of an arbitrator to act. The company's challenge of the

board's power to act was in effect a jurisdictional problem which ordinarily should be resolved before a hearing on the merits of a submission is had.

The awards are further attacked on the ground that the general provision for arbitration did not extend to a dispute arising under the clause authorizing a reopening of the contract as it pertained to wages and hours. This claim is fully met by the breadth of the arbitration clause. It provided that, after amicable negotiations proved futile, any grievance or dispute could be submitted to the board. It contains no hint of any limitation such as that suggested by the company. See *United Electrical, &c.* v. *National Pneumatic Co.,* 134 N. J. L. 349, 354, 48 A. 2d 295.

Nor is there any merit to the claim that the board exceeded its authority in making wage increases retroactive to October 16, 1948. The union had notified the company during the preceding August that it wanted the contract to be reopened for the purpose of revising the schedule of wages as of October 16. This was in conformity with article 21. The dispute which ensued, then, was whether they should be increased as of that date, and this was the exact dispute which the board settled. Since the award was not made until more than a year later, the only method by which it could be rendered effective was to make it retroactive. To hold otherwise would be to place a premium on recalcitrance and would invite dilatory tactics to prolong an arbitration on grounds as spurious as some of those appear to have been in the instant case.

Another contention is that the awards are invalid since they were not made within the time limitation set by § 608a of the 1949 Supplement. We accept, for the purposes of this case, the parties' insistence that this statute is controlling. See *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 210, 70 A. 2d 120.

It provides: "After a matter has been fully heard, the [board], by a majority of its members, shall, within fifteen days, render a decision thereon in writing. . . ." The hearing took place on October 13; the last of several executive sessions held by the board to deliberate occurred within a week after November 7; and the award was made on November 15.

We need not determine whether the words "after a matter has been fully heard" refer to the day when the introduction of evidence was completed or to the time of the final executive session called for the purpose of considering the evidence. This follows from our view that the statutory time limitation is directory and not mandatory. A statute similar to § 608a was so construed by the Supreme Court of Michigan. *Pingree* v. *State Court of Mediation*, 130 Mich. 229, 233, 234, 89 N. W. 943. Provisions designed to secure order, system and dispatch in proceedings are generally held directory unless accompanied by negative words. *Morey* v. *Hoyt*, 65 Conn. 516, 524, 33 A. 496. Section 3718 of the General Statutes, Rev. 1902, reads in part: "The decision of the [railroad] commissioners . . . shall be communicated to the petitioners . . . within twenty days after the final hearing . . . ." In holding this to be merely directory, we said: "[T]he provision in question is one which relates to the communication to the parties concerned of the results of a hearing; . . . the language which expresses it is affirmative in its character and such as would naturally be used to secure the prompt and proper dispatch of public business; . . . neither negative nor prohibitive language appears in the Act, and . . . there is nothing contained in it which is naturally expressive of an intention to make compliance a condition precedent to action, or to thereby create a limitation of power." *Spencer's Appeal*, 78 Conn. 301, 304, 61 A. 1010.

In determining whether a statute is mandatory or merely directory, the most satisfactory and conclusive test is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words whether it relates to matter of substance or to matter of convenience. *Gallup* v. *Smith*, 59 Conn. 354, 358, 22 A. 334. Viewed in the light of this test, the provision of § 608a is directory. It relates to procedure. The language is affirmative in character and such as would naturally be used to secure prompt dispatch of the arbitration. The statute contains nothing which expressly invalidates a belated award or which inferentially makes compliance therewith a condition precedent. The provision is not of the essence of the thing to be accomplished.

An omission in § 608a gives a further clue to the legislative intent. In the general arbitration statute (not here involved), there is the significant provision which expressly declares an award to be of no legal effect if not made within sixty days from the time when the arbitrator was empowered to act. General Statutes § 8159. No comparable provision is incorporated in § 608a. Its requirements, we hold, are merely directory.

The final claim that the board failed to file copies of the award with the town clerk of Bridgeport, as required by § 608a, is without merit. The provision for so filing is likewise directory.

We have construed the various statutes in question with a liberality which the legislative intent justifies. The use of arbitration should be encouraged. It is true that the beneficial results of the procedure can be realized only when the agreement to arbitrate is drafted with care to comply with legal requirements. The same may be said of the submission. It should state the specific question to be decided with definiteness and it should be of such a nature that the award which

follows will answer the question with exactitude. In this manner, a judgment of the court entered thereon will be an enforceable and binding judgment. When these requirements are met, arbitration deserves the enthusiastic support of the courts.

There is no error.

In this opinion the other judges concurred.