### CLARENCE T. MARSALA *v.* VALVE CORPORATION OF AMERICA

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued December 4, 1968—decided January 8, 1969

*Clifford R. Oviatt, Jr.,* with whom, on the brief, was *John A. Sabanosh,* for the appellant (defendant).

*Lawrence J. Merly,* for the appellee (plaintiff).

KING, C. J. This was a proceeding brought by the plaintiff, under § 52-418 of the General Statutes, which provides, in material part, that the Superior Court "shall make an order vacating . . . [an arbitration] award upon the application of any party to the arbitration: . . . (d) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made".

The plaintiff was employed by the defendant as its personnel manager under a contract dated May 17, 1965, which provided, inter alia, that the contract of employment could not be terminated by either party except for "just cause"; that, if a dispute arose as to what constituted "just cause", it should be determined by a three-member board of arbitration; that one member of such board should be chosen by each party; and that the two thus chosen should themselves choose the third arbitrator.

On December 9, 1966, the plaintiff was discharged on the ground that he had been disloyal. On December 12, he requested arbitration of the dispute as to the propriety of his discharge. The plaintiff chose John V. Turk, Jr., as his arbitrator, the defendant chose Philip H. Smith, an attorney, and the two chose, as the third arbitrator, Peter Seitz. The selection of the three arbitrators was completed on January 30, 1967.

None of the arbitrators was ever sworn, as required by General Statutes § 52-414, although at

some point in the proceedings the parties attempted orally to waive that statutory requirement.

On February 22, the arbitrators scheduled the arbitration hearing for May 10. The plaintiff, on February 21, had made application to the Superior Court, apparently pursuant to General Statutes § 52-412, for the taking of a deposition of Philip Sagarin, an officer of the defendant, and on March 20, the plaintiff filed in the Superior Court a notice that Sagarin's deposition would be taken on April 10. On March 22, the defendant asked the plaintiff for alternate dates for the taking of the Sagarin deposition, and it was rescheduled for April 20, at which time it was taken.

The arbitration hearing was held on the scheduled date, May 10, both parties participating and represented by counsel, and the hearing was completed on that day. At the close of the hearing, in response to an inquiry of arbitrator Seitz as to the method of summation, the plaintiff's attorney stated that he would like to have briefs exchanged, and it was agreed that briefs should be exchanged not later than June 13, which was done, and copies were mailed to the arbitrators on that day.

On August 8, the plaintiff's attorney received by mail the award, which consisted of a majority award in favor of the defendant and signed by arbitrators Seitz and Smith and a minority award, in favor of the plaintiff, signed by arbitrator Turk.

On August 29, the plaintiff filed the aforesaid application to vacate the award. The relevant specific grounds were (a) that the award was not rendered within the statutory period of "sixty days from the date on which . . . [the] arbitrators . . . were empowered to act", as required by General Statutes § 52-416, and (b) that the arbitrators, prior

to hearing testimony and taking evidence, were not sworn as required by General Statutes § 52-414 and there was no written waiver of this requirement. The court, after hearing, entered judgment vacating the award on the ground that it had not been rendered within the statutory time limit, and, in effect, it held that the date on which the arbitrators "were empowered to act" within the meaning of § 52-416 was not later than May 10, 1967, which was the date on which the arbitration hearing was held and the evidence concluded. From the judgment vacating the award the defendant appealed.

Arbitration agreements are to be favorably construed by the courts. *Gaer Bros., Inc.* v. *Mott,* 144 Conn. 303, 307, 130 A.2d 804, and cases cited. But a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner in which, he has agreed so to do. *Visselli* v. *American Fidelity Co.,* 155 Conn. 622, 624, 237 A.2d 561; *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 274, 231 A.2d 531, and cases cited. While the agreement for the arbitration of a dispute may contain special provisions governing the conduct of the arbitration proceedings, in the absence of such special provisions the arbitration proceedings are governed by the applicable provisions of our general arbitration statutes.[1] *McCaffrey* v. *United Aircraft Corporation,* 147 Conn. 139, 141, 157 A.2d 920. These statutes consist of §§ 52-408 through 52-424 and are contained in what is now chapter 909 of the General Statutes. Neither party makes any claim that the

---

[1] In chapter 560 of the General Statutes, which is not applicable to this proceeding, there are certain special statutory provisions regarding the arbitration of labor disputes before the board of mediation and arbitration. See cases such as *Danbury Rubber Co.* v. *Local 402,* 145 Conn. 53, 55, 138 A.2d 783; *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345.

provisions of chapter 909 are not applicable or that the agreement to arbitrate contained any special provisions relevant or material to the present controversy. Chapter 909 was first enacted as chapter 65 of the Public Acts of 1929 and, with some changes, was taken from the Uniform Arbitration Act first promulgated in 1925. Since that time a new Uniform Arbitration Act has been promulgated, differing considerably from the original act and reflecting changes and improvements suggested by experience in arbitration proceedings under the original Uniform Act. 9 Uniform Laws Annotated (1957) 76.

It is provided in General Statutes § 52-414 that, "[b]efore hearing any testimony or examining other evidence in the cause", the arbitrators "shall be sworn to hear and examine the matter in controversy faithfully and fairly and to make a just award according to the best of their understanding, unless the oath is waived in writing by the parties to the arbitration agreement". Here, the arbitrators were not sworn, and there was an oral, but not a written, waiver of that requirement. The statute expressly requires that the waiver be in writing. Since for the reasons hereinafter pointed out the court was not in error in vacating the award because it had not been rendered within the sixty-day time limit, it is unnecessary to determine the efficacy of the parties' attempted oral waiver of the requirement of the oath.

We turn now to the phrase "empowered to act" since it is clear that the sixty-day period ran from that time, whatever that time was.[2] In the first

---

[2] The ambiguity in the phrase "empowered to act", the differing interpretations which have been put upon it, and the need for a clarifying amendment are all pointed out in Siegel, "Time Limits for an Arbitration Award in Connecticut," 30 Conn. B.J. 360.

place, it is important to note that, although what is now General Statutes § 52-416 was taken from § 8 of the original Uniform Arbitration Act, the Uniform Act provided that the sixty-day period should run from the time the arbitrators were appointed, while in the Connecticut statute the phrase "empowered to act" was deliberately substituted. This makes it clear that "empowered to act" does not refer to the time when the arbitrators are appointed as seems to be suggested at one point in the defendant's brief.

Although the arbitrators may, prior to taking the oath, perform some ministerial acts such as assigning a time for a hearing or granting a postponement, under General Statutes § 52-414, as hereinbefore noted, "[b]efore hearing any testimony or examining other evidence in the cause, the arbitrators . . . shall be sworn".

Under the quoted provisions of § 52-414, it is clear that chapter 909, construed as a whole, contemplates that the arbitrators shall not be empowered to take testimony or evidence until they have been sworn or until the oath has been waived in writing. Since the taking of testimony or evidence is indispensable to the performance by the arbitrators of their duties, it is clear that they must be "empowered to act" within the contemplation of the statute not later than the time when the taking of testimony and evidence begins. Here, the hearing began, and indeed was completed, on May 10. We conclude that May 10 was the latest date on which it could be said that the arbitrators became "empowered to act" as envisioned in the statute. This, in effect, was what the court held. Of course the parties could not, by their failure to comply with the terms of the statute as to the oath, change the pro-

cedure which chapter 909 contemplated would be followed, and it is this contemplated procedure as set forth in the chapter which must be considered in construing the phrase "empowered to act".

The defendant makes the claim that, until arbitrators had heard the testimony and evidence and received the briefs, they were not "empowered to act" since they could not render a valid award at any prior date. We find little merit in this claim. It amounts to one that "empowered to act" means "empowered to decide". Had the General Assembly meant any such thing, it would have used language apt to express such a concept. Indeed, in proceedings under chapter 560 of the General Statutes before the board of mediation and arbitration involving a labor dispute, the General Assembly made clear in the applicable statute that the time in which a decision must be rendered runs from the time "a matter has been fully heard". General Statutes § 31-98; *Danbury Rubber Co.* v. *Local 402*, 145 Conn. 53, 58, 138 A.2d 783.

The award was not rendered until August 8, 1967, which was well over sixty days, and, indeed, almost three months, after the latest date on which the arbitrators could have become "empowered to act" under the construction which we have given that phrase. It follows that the award, under the express wording of the statute, had "no legal effect". General Statutes § 52-416.

The defendant claims that in any event the plaintiff's conduct must be held to have constituted a waiver of any delay in the rendition of the award. Section 52-416 expressly provides that "[a]n award made . . . [more than sixty days after the arbitrators have been empowered to act] shall have no legal effect unless the parties expressly extend the

time in which such award may be made, which extension or ratification shall be in writing". This clearly makes the provision mandatory and not merely directory and, as such, beyond the powers of the parties to modify except in the manner provided in the statute itself. All this is brought out in *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345.

The mandatory character of § 52-416 is further reinforced by § 52-413, which, after authorizing the arbitrators to postpone the hearing or to adjourn it from time to time, provides that "no postponement or adjournment shall extend the time as prescribed in section 52-416, or the time, if any, fixed in the arbitration agreement for rendering the award".

Sections 52-413 and 52-416, taken together, permit the parties to exercise their common-law right to fix, in the agreement for arbitration, the time in which the arbitrators must render their award. Section 52-416 also permits the parties, in writing, to extend the time in which the award may be made or to ratify a late award. Here, however, there was no express extension or ratification in writing. Indeed, there was not even an oral express extension or an oral ratification of the late award. There was, it is true, conduct of both parties which was irreconcilably inconsistent with a compliance with the provisions of the statute as to the time of the rendition of the award. Except for the drastic, mandatory provisions of the applicable statutes, as previously pointed out, it is quite probable that we could, and would, find that each party, by his conduct, had waived the sixty-day time limit. See note, 154 A.L.R. 1392, 1403. Certainly, we find nothing to commend in this plaintiff's conduct in seeking to have the award vacated under § 52-416. But the express

provisions of the applicable statutes, and especially the provision in § 52-416 that the award, under the circumstances of this case, "shall have no legal effect", preclude our finding any waiver or estoppel. The conclusion of the trial court that the award must be vacated was not only not erroneous but was the only conclusion which it could reach under the provisions of our applicable general arbitration statutes.

There is no error.

In this opinion the other judges concurred.