GEORGE V. MOREY AND WIFE vs. JEANNIE P. HOYT ET AL., EXECUTORS.

Third Judicial District, Bridgeport, October Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Personal property cannot be appropriated by a creditor to pay his debt by sale on execution, unless at every step the course prescribed by law is strictly pursued.

Section 1158 of the General Statutes requires an execution sale to be made "at the end of 21 days" after the notice of sale is posted. *Held* that this requirement is mandatory and that a sale made 22 days after the posting was invalid, and gave the purchaser no title to the property nor right to the possession, as against the execution debtor.

If the execution purchaser on such a sale did not obtain actual possession, he cannot sue the actual possessor for conversion of the property, though the latter's possession was wrongful as to the owner, or any one legally claiming under him.

[Argued October 30th, 1894—decided February 8th, 1895.]

ACTION in the nature of trespass and trover to recover damages for certain articles of personal property alleged to have been forcibly taken from the possession of the plaintiffs by the defendants' testator, and to have been converted by him; brought to the Superior Court in Fairfield County and tried to the jury before *Thayer, J.;* judgment of nonsuit rendered by the court upon the defendants' motion, after the plaintiffs had introduced their evidence, and appeal by the plaintiffs. *No error.*

In this court, as the case was called for argument, the appellees moved to dismiss upon the ground that no judgment could be rendered against the defendants for a tort of their testator, as the right of action against him died with the tort-feasor. Upon consultation the court permitted counsel on either side to file a brief on this point, and thereupon the argument upon the appeal proceeded.

The case is sufficiently stated in the opinion.

*Goodwin Stoddard* and *William D. Bishop, Jr.,* for the appellants (plaintiffs).

I. "In cases tried to the jury we have established the rule

that if there is substantial evidence produced by the plaintiff in support of his cause, which should be weighed and considered by the jury, a nonsuit ought not to be granted."
*Booth* v. *Hart*, 43 Conn., 484; *Osborne* v. *Bradley*, 46 id., 466; *Wilkinson* v. *Scott*, 17 Mass., 258; *Thornton* v. *Gibson*, 43 Ga., 395; *Eaton* v. *Lancaster*, 79 Me., 477; *Woodrow* v. *Cooper*, 3 Ia., 214; *Coleman* v. *Simpson*, 2 Dana (Ky.), 166; *Hornsby* v. *S. C. R. Co.*, 26 S. Car., 187; *Lehman* v. *Kellerman*, 65 Pa. St., 489; *Wothaut* v. *Leahy*, 23 Wis., 114; *Ferguson* v. *Tucker*, 2 Har. & G. (Md.), 182; *Babb* v. *Clemson*, 12 S. & R. (Pa.), 328; *Mercer* v. *Walmsley*, 5 Har. & J. (Md.), 27; *Perley* v. *Little*, 3 Me., 97; *Mercier* v. *Mercier*, 43 Ga., 323; *Byrd* v. *Blessing*, 11 Ohio St., 362.

II. If the evidence tended to prove, first, a right in the plaintiffs to the possession of the property in suit at the time of the demand; and second, conversion by the defendants of such property—the court erred in granting the nonsuit. 1 Swift's Dig., 535; 2 Greenl. Ev., §§ 640, 642. There can be no question as to the proof of conversion.

III. The plaintiffs acquired a valid title and the right of possession by virtue of the levy and execution sale.

It does not necessarily appear from the officer's return that the sale was more than twenty-one days subsequent to the posting of the property. It does not conclusively and necessarily appear that the property was posted on the 25th day of May. It is not impossible to interpret the meaning of the word "*thereupon*," as used by the sheriff, as referring to the day following the 25th day of May, and if this was so, the action of the sheriff would be in accordance with the statute. Nor does it necessarily appear from this return, that the sale was advertised to take place on the 16th day of June. *Booth* v. *Booth*, 7 Conn., 367–8; *Whittlesey* v. *Starr*, 8 id., 137; *Peck* v. *Wallace*, 9 id., 453; *Pickett* v. *Allen*, 10 id., 155.

But if the court was right in taking this question of fact from the jury and deciding on the evidence that the property was posted twenty-two days before the time fixed for the sale, instead of twenty-one days; yet it was not right in deciding

that the sale was *therefore absolutely void and that this defendant could take advantage of the error* and thereby defeat the title of the plaintiff in this action. " The general rule is," says Mr. Freeman, " that statutes requiring notice of sale to be given are *directory merely,* and that the failure to give such notice cannot avoid the sale against any purchaser not himself in fault." Note in 44 Am. Dec., 239, citing Freeman on Executions, § 286 ; *Maddox* v. *Sullivan,* 2 Rich. Eq., 4, 75 Am. Dec., 704 ; *Frink* v. *Roe,* 70 Cal., 292 ; *Burton* v. *Spiers,* 92 N. Car., 503. If the sale is made without authority it is void ; but if it is merely irregular, or made on irregular process, it may be set aside if the proper steps are taken in time. 12 Amer. & Eng. Ency. of Law, 210 ; 22 id., 583. In some States such irregular sales are made void by statute, as in Tennessee. " But," says Mr. Freeman, " purchasers generally are not prejudiced by the irregular acts of the officers in which they do not participate and of which they have no notice." See also *Lawry* v. *Irving,* 39 Am. Dec., 597, and note.

" It is an established rule of this court that the statute requiring notice of execution sales to be given is directory merely, and that a mistake in, or even a failure to give notice, will not invalidate a sale to an innocent purchaser. *Files* v. *Habbison,* 29 Ark., and cases cited. The rule operates also to protect the title of a purchaser against errors or irregularities in the proceedings, which do not render the writ a nullity." *Hoffman* v. *Gains,* 47 Ark., 226–229 ; *Jackson* v. *Spink,* 59 Ill., 404 ; *Frink* v. *Roe,* 70 Cal., 302 ; *Rounsaville* v. *Hazen,* 33 Kan., 71 ; *Wade* v. *Saunders,* 70 N. Car., 270 ; *Mitchell* v. *Nodaway* Co., 80 Mo., 257 ; *White* v. *Cronkhite,* 35 Ind., 483 ; *Wallace* v. *Trustees,* 52 Ga., 164 ; *Thulmeyer* v. *Jones,* 37 Tex., 560 ; *Lee* v. *Howes,* 3 N. C., Q. B., 292 ; *Hering* v. *Chambers,* 103 Pa. St., 172.

IV. But if there were errors and irregularities in the action of the sheriff, or the proceedings which were the foundation of the sheriff's authority, this defendant cannot take advantage of them to defeat the title of the plaintiff.

" In general, the purchaser's title is unimpeachable by any

error in the proceedings not occurring through his own fault. Such irregularities must be corrected by a direct proceeding therefor: they are of no avail in a collateral attack." 22 Amer. & Eng. Ency. of Law, 640; *Park* v. *Darling*, 4 Cush., 197; *Colbert* v. *Jewell*, 130 Mass., 182; *Welles* v. *Lombard*, 32 Minn., 259; *Caldwell* v. *Blake*, 69 Me., 458; *Sowles* v. *Harvey*, 20 Ind., 217; *Sellers* v. *Fite*, 59 Tenn., 120; *Randolph* v. *Carlton*, 8 Ala., 606; *Riddell* v. *Bush*, 27 Tex., 675; *Rigg* v. *Cook*, 4 Gill. (Ill.) 356; *S. C.*, 46 Amer. Dec., 462; *Jones* v. *Carahan*, 63 Ind., 229; *Johnson* v. *Murrey*, 112 id., 154 (2 Am. St. Rep., 174); *Richey* v. *Merritt*, 108 Ind., 347; *Evans* v. *Robertson*, 92 Mo., 192 (1 Am. St. Rep., 701); Rorer on Judicial Sales, 192; *Swiggart* v. *Harvey*, 4 Skam., 338, 39 Amer. Dec., 422; *Ayers* v. *Duprey*, 27 Tex., 593, 86 Amer. Dec., 668; *Parks* v. *Rooney*, 11 Ga., 423; *Ware* v. *Bradford*, 2 Ala., 676; *Newton* v. *State Bank*, 14 Ark., 9; *Minor* v. *President, etc.*, 4 Smedes & M. 602; *Carr* v. *Glasscock, etc.*, 3 Gratt., 243; *Humphrey* v. *Beeson*, 1 Green, (Ia.), 200; *Tuttle* v. *Gates*, 24 Me., 395; Freeman on Executions, §§ 73, 274; Freeman on Void Judicial Sales, § 30.

The law of Connecticut is in conformity to the principles enunciated in the foregoing cases. *Pratt* v. *Pond*, 45 Conn., 388; *Williams* v. *Miller*, 16 id., 148.

*James H. Olmstead* and *Daniel Davenport*, for the appellees (defendants).

I. Plaintiffs offered no evidence whatever in support of the first two counts in their complaint, which were for trespass. The third count is based upon the claim that Mrs. Morey owned the property in dispute, and that the defendants' testator converted the same to his own use.

In order that the plaintiffs might recover under the third count, it was necessary for them to show that she had title to the property in dispute. It set forth a cause of action for which the action of trover was formerly the appropriate remedy. In that action two points were essential to be proved: First, property in the plaintiff and a right of possession at the time of the conversion; and second, a con-

version of the thing by the defendant to his own use. *Rice* v. *Clark*, 8 Vt., 110; 2 Greenl. on Ev., § 636; *Shelton* v. *Soper*, 14 Johns., 353; *Clapp* v. *Glidden*, 39 Me., 451; *Odiorne* v. *Colley*, 2 N. H., 67.

Inasmuch as the property in question was subject to earlier attachments, when sold on execution to Mrs. Morey, she acquired no title. It is a familiar principle of the law that a purchaser of property at a sheriff's sale, under an execution which has been levied upon the property when in the custody of the law, acquires no title. If he could, infinite confusion would result. *Hartwell* v. *Bissell*, 17 Johns., 128; *Hackley's Exrs.* v. *Swigert*, 5 B. Mon., 87; *Walling* v. *Miller*, 108 N. Y., 176.

The property was in the custody of the law. Although the law permits property while in the custody of an officer to be attached in a subsequent suit by the same officer, and in this State by another officer, it remains in the custody of the law under the first attachment. *Tomlinson* v. *Collins*, 20 Conn., 376; *Williams* v. *Miller*, 16 id., 147; *Owen* v. *Dixon*, 17 id., 499; Freeman on Executions, § 135; *Beers* v. *Place*, 36 Conn., 578.

III. The sale of the property at the end of twenty-two days from the day of posting, instead of at the end of twenty-one days as the statute directs, also rendered the sale void. General Statues, §§ 1158, 1162. This court will not tolerate a construction of the statute so plainly contradictory of its positive terms and violative of its spirit and intent. And it has already, on principle, decided this case in deciding the case of *Webster* v. *Peck*, 31 Conn., 497: "It is conceded that personal property cannot be taken or appropriated by a creditor in payment of his debts by levy and sale on execution, unless at every step the course prescribed by law is strictly pursued." The law having prescribed the day upon which the property must be sold, and having pointed out with unerring precision the mode of its ascertainment, it will not permit a debtor to be robbed of its benefits by holding a sale, made in defiance of its wise and salutary provisions, valid.

The plaintiffs offered no evidence that the prior attachment liens had been waived at the time of the levy of the execution, or at the time of the sale thereunder. On the contrary, we find George V. Morey, in behalf of his wife, paying nearly $1,000 two days after the levy, in securing an assignment of the claims in suit, and holding the attachment liens as security until after the sale, with the express purpose of recovering, by means of those attachments, her money in case she should fail to purchase at the execution sale.

TORRANCE, J. At a former term of this court, upon an appeal by the defendants in this case, a new trial was granted. *Morey* v. *Hoyt*, 62 Conn., 542. Before the case came on again for trial in the court below, the complaint was amended by adding a third count, alleging in substance, that in June, 1882, the plaintiffs were the owners and possessors of the property described in the complaint, and that on or about the 24th of that month, Hoyt, the original defendant in the case, unlawfully took said property from the plaintiffs and without their authority converted the same to his own use. The answer to this was a general denial and the case was tried to the jury. After the plaintiffs had rested their case, the court on the defendants' motion ordered a nonsuit, which it subsequently refused to set aside; and the question on the present appeal is whether the court below erred in so doing.

From the uncontradicted and undisputed evidence in the case, the following facts, among others, appear:—

In January, 1881, a New York corporation called The Hollingshead Electro Depositing and Manufacturing Company, leased from Hoyt certain real estate in Stamford, by a written lease, for the term of five years; said company went into the occupancy of said property under the lease, and put in and upon it the property described in the complaint; subsequently in March, 1882, this property of the corporation in and upon the leased premises was attached by William B. Hollingshead, a creditor of the company, in

a suit brought against it by him, returnable to the Superior Court for Fairfield county on the second Tuesday of February, 1882; in May, 1882, a judgment was rendered in said suit against the company for upwards of four thousand dollars, on which judgment an execution was issued and levied upon the property described in the complaint, and on the 16th day of June, 1882, the property levied upon was sold under the execution on the leased premises to the plaintiffs in this suit for the sum of $1,938.

The plaintiffs claimed title to the property in question under the execution sale, and whether said sale conferred upon them any title to the property in controversy, or any right to its possession, was thus the important question in the case. Before considering that question, however, it may be well first to dispose of a claim made by the plaintiffs in the lower court and here, to the effect that even if the execution sale, as such, conferred no title to the property or right of possession upon the plaintiffs, still there was evidence to show that in making it the sheriff acted as the agent of the owners and of all others having an interest in the property; that he sold it for them, by their direction and with their consent; and that the evidence upon this point entitled the plaintiffs to go to the jury.

We think this claim has no foundation. The undisputed evidence in the case shows clearly that whatever the officer did in making the sale, he did wholly and solely as an officer of the law under the execution, and that Hollingshead all the way through was acting adversely to the corporation whose property was sold, and to all others having interests therein. There is, we think, no evidence showing or tending to show that the officer was acting as the agent of the owner of the property, or that he sold it by its direction or with its consent; and on the contrary the undisputed evidence shows that the entire proceedings were, as against the corporation, *in invitum*. In short, after a careful consideration of all the evidence bearing upon this point, we think it does not sustain the claim made by the plaintiffs in this behalf.

It follows that the plaintiffs in this case must stand upon the title to, and rights in, this property, if any, which they acquired under and by virtue of the execution sale; for the title and rights of possession obtained at that time and under that sale, are the title and rights which were invaded by the claimed conversion and upon which the plaintiffs must recover if at all.

The defendants claim that the plaintiffs acquired no title or right of possession under the execution sale for two reasons: first, because the sale was not made at the end of twenty-one days after the notice of sale was posted, as required by the then existing statute, which was substantially the same as § 1158 of the present General Statutes; and, second, because at the time of the levy and sale the property was subject to certain liens by way of attachment. We will here consider the first of these reasons.

The officer's return upon the execution, laid in evidence by the plaintiffs, shows that the levy was made on the 25th day of May, 1882, and that the sale was made on the 16th day of June following. After stating the preliminary demand, the return proceeds as follows: "And afterward on the 25th day of May, 1882, I levied this execution on (here follows a description of the property) and took the same into my possession and keeping; and thereupon I posted on the sign post * * * a particular description of said property, with a notice that the same would be sold at the factory in said Stamford * * * at the end of 21 days, at public auction." In addition to this, which might perhaps be regarded as leaving the precise date when the notice of sale was posted open to doubt, there is the positive uncontradicted testimony of the officer, that he posted such notice on the 25th day of May, the day he made the levy.

It thus clearly appears beyond dispute upon the evidence, that the sale was made at the end of twenty-two days from the day of posting, instead of at the end of twenty-one days, as the statute required. The important question now is, what effect this failure of the officer to sell at the end of

twenty-one days had upon the sale of the property actually made by him.

It certainly is true, as a general rule, that personal property cannot be taken and appropriated by a creditor in payment of his debt, by levy and sale on execution, unless at every step the course prescribed by law is strictly pursued. We are here concerned with only one of those steps, but certainly a very important one ; a step that has been regulated by positive statutory enactment in this State for more than two hundred years. Revision of 1808, p. 281, note (1).

The statute in express terms directs the property to be sold at the end of twenty-one days, and it carefully points out how the day of sale shall be ascertained. This, by clear implication, forbids the sale at any other time, and so we think this requirement is mandatory and not merely directory. It is undoubtedly true that some statutory requirements, intended merely for the guidance of officers in the conduct of business, are directory merely. Such are regulations designed to secure order, system and dispatch in proceedings. Provisions of this character are, as a general rule, not mandatory unless accompanied by negative words importing that the acts shall not be done in any other manner or at any other time than that designated. But when the requirement, as here, is intended for the protection of parties whose property rights are to be taken *in invitum*, and to prevent those rights from being sacrificed, it should as a rule be held to be mandatory and not merely directory. In such cases, certainly as against all parties whose rights are or may be affected by the proceedings, the power of the officer is limited by the requirements prescribed for its exercise. As against the execution debtor, then, we think the officer in this case had no power to sell the property at the end of twenty-two days; he had no more power to do it then, than he would have had to sell it at the end of one day, or fifty days, or without giving any notice of the sale at all ; the sale as to the execution debtor was clearly invalid, did not divest it of its title to the property, and did not of course transfer to, or confer upon, the plaintiffs any title to

the property. *Webster* v. *Peck*, 31 Conn., 495. That they may have bought in good faith and for full value, can make no difference so far as the judgment debtor is concerned; they are taking his property *in invitum*, and *caveat emptor* applies at such a sale.

If the plaintiffs, as against the execution debtor, did not acquire title to the property by the sale, neither did they, as against it, obtain any right to the possession of the property ; for the officer then had no such right and could not of course confer any. In short, as to the execution debtor, the levy and sale was " an unwarrantable trespass." *Dutton* v. *Tracy*, 4 Conn., 370.

As the plaintiffs did not by the execution get any title to the property, or right to the possession of it as against the execution debtor, it may be pertinent to inquire whether the evidence shows that they then obtained the actual possession of it, which would be a legal possession as against every one save the true owner. If at the time of the sale the officers delivered the property to the plaintiffs, and they went into the actual possession of it, this would be a legal possession of it as against every one save the owner and those claiming through or under him. If, in this condition of things, Hoyt, as a mere stranger and wrong-doer, took the property out of their possession and converted it to his own use, the plaintiffs could successfully maintain a suit against him for its value. Any possession is a legal possession as against a mere wrong-doer. *Graham* v. *Peat*, 1 East, 244–246. In such a case the wrong-doer cannot defend himself by showing a better title than the plaintiffs, in some third person through or under whom he does not himself claim or justify. *Jefferies* v. *G. W. Railway Co.*, 5 E. & B., 802. But the evidence in the case shows no such condition of things as we have supposed.

The uncontradicted evidence in the case shows clearly that up to the time when it is claimed the conversion took place, the plaintiffs never had the possession of the property or any of it, but that Hoyt did have such possession. There is no evidence to show that Hoyt ever took any of the property

out of the actual possession of the plaintiffs, for it was all in his possession until he chose to surrender some of it.　Before the day of the sale, and on that day, he was in the actual and exclusive possession of the leased premises, and of the property of the execution debtor which was therein contained.　He had removed the old locks from the doors and put on new locks of his own, and kept everybody out of possession.　In short, without reciting the evidence here upon this point, we think it clearly shows that from the moment of the sale and before and up to the time of the claimed conversion the plaintiffs never had the actual possession— meaning by this the legal possession as distinguished from a right of possession—and that Hoyt never took the property out of their possession; because before, on, and after the day of sale, and up to the time of the claimed conversion, the actual possession was in him.　If we concede that this possession on the part of Hoyt was wrongful as against his tenant, both as to the leased property and as to the other property, and that the evidence clearly shows this, it would still be a legal possession as against every one save the tenant, or those who claimed under some valid transfer or conveyance from the tenant, or under a valid levy.

It thus, we think, clearly appears that, as against the execution debtor, the plaintiffs, under and by virtue of the execution sale, obtained neither the title to the property, nor a right of possession to it or any of it; nor did they obtain actual possession of it or any of it.

But the plaintiffs strenuously insist that, if this be so as against the execution debtor, it is not so as against Hoyt. They claim that he was a mere wrong-doer, who will not be permitted to take advantage in this action of the outstanding title and rights of possession of the execution debtor; they claim that as against him they obtained, by the sale, a title to the property, which drew to itself the right of possession, and that this right of possession is sufficient, without actual possession, to enable them to maintain this action.

It undoubtedly is true that if the plaintiffs obtained the

title to this property as against Hoyt, and the property was not in the possession of another, this title would draw to itself the legal possession. *Bulkley* v. *Dolbeare*, 7 Conn., 232. And it may be conceded that if the plaintiffs, at the time of the claimed conversion, had the immediate right of possession, this alone, without actual possession, would enable them to maintain this suit, as against a mere wrong-doer. *Ashmead* v. *Kellogg*, 23 Conn., 70.

But Hoyt, if he was in possession of the property at the time of the sale, and if he remained in possession of it till after the time of the claimed conversion, cannot be regarded as a mere wrong-doer, *quoad* these plaintiffs. In taking possession of it prior to the sale, whatever wrong he did, was done, not to these plaintiffs, but to others. His possession, if it was and continued to be wrongful as to the execution debtor, was rightful as to everybody else who could not show a valid title and right superior to that of such debtor, or derived from him. Now, the utmost the plaintiffs can claim upon the evidence is, that as against Hoyt they obtained a title to the property and a right of possession, and not the legal possession. Suppose, for the purposes of the argument, we concede this to be true, it does not help the plaintiffs; for in such case the law is so that Hoyt can take advantage of the fact that the plaintiffs' title and right are inferior to that of the owner, even though Hoyt does not claim under the owner. In short, in such case the plaintiffs must recover upon the merits of their own right of possession; in other words upon the " strength of their own title," and not upon the weakness of the defendants' title.

As we have already seen, if the plaintiffs had obtained possession of the property and Hoyt had without right invaded that possession, he would have been a mere wrong-doer, and would not be permitted to set up this defect in the plaintiffs' title, unless he in some way claimed under the execution debtor; but where the plaintiffs must recover, if at all, upon their right of possession, and that too as against one rightfully in possession as to them, the case is different. The law upon this point is thus stated in Pollock and Wright

on Possession, page 91: "Existing possession, however acquired, is protected against any interference by a mere wrong-doer; and the wrong-doer cannot defend himself by showing a better title than the plaintiffs' in some third person through or under whom he does not himself claim or justify. * * * On the other hand a plaintiff, who seeks redress solely for a wrong done to his right to possess, is not favored to the same extent. If his actual possession has not been disturbed by the act complained of, he may be defeated by showing that some one else, who need not be the defendant, or any one through whom the defendant claims, had a better right to possess." See also the case of *Leake* v. *Loveday*, 4 M. & Gr., 972.

In the case at bar, then, if we concede that as against Hoyt alone, the plaintiffs by the execution sale obtained title to the property and a right of possession merely; still, as the evidence shows that the plaintiffs never had possession, and Hoyt did have possession, he may show the superior title and right of possession outstanding in the execution debtor—and which, as against such debtor, the plaintiffs never acquired—*to* defeat the plaintiffs' right to recover in this action; and this chiefly on the ground that he, Hoyt, would be answerable over to the execution debtor for his wrongs committed against it. As, therefore, we think the evidence clearly shows the existence of such a superior title and right outstanding in another, it follows that, whatever may be said as to the other points in the case, the nonsuit was rightfully granted and should not be set aside.

In view of the conclusion reached, it is unnecessary to consider any of the other points in the case which were argued before this court.

There is no error.

In this opinion the other judges concurred.