**E. H. BARDES RANGE & FOUNDRY CO. v WEAVER**

Ohio Appeals, 2nd Dist., Montgomery Co.

No. 1722. Decided May 14, 1942.

Matthews, Matthews & Altick, Dayton, for plaintiff-appellee.

Pickrel, Schaeffer & Ebeling, Dayton, for defendant-appellant.

**OPINION**

By BARNES, J.
The above entitled cause is now

being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The following brief history of the factual questions will aid in an understanding of the issuable questions.

In July, 1936, the present defendant, Elgar Weaver, contracted with W. F. Schmidt, of Dayton, a heating contractor, to install a stoker and do certain other work in and about the Bellevue Apartments. This was a very large building, consisting of some sixty apartments. Thereafter W. F. Schmidt contracted with the present plaintiff, The E. H. Bardes Range and Foundry Company, of Cincinnati, for the furnishing and installing of a certain Bardes stoker complete with controls, and entered into a written contract with the company, agreeing to pay for such stoker, including installation, the sum of $1012.00, provided said stoker proved satisfactory after the same was tested. Mr. Weaver was not a party in any manner to the contract between Schmidt and the Bardes Company. The written contract between the Bardes Company and Schmidt set forth the kind of stoker desired, the method of installation, price and specifically set forth that the operation of the stoker was to be satisfactory after testing.

Mr. Weaver had a separate contract with Schmidt, claimed to contain, among other things, a provision that the stoker was to operate satisfactorily after installation.

The installation of the stoker started on or about October 2, 1936, and was completed and ready for operation on or about December 26, 1936. The stoker did not operate satisfactorily, and Mr. Schmidt promptly notified the Bardes Company. The Bardes Company made several alterations and numerous efforts to have the stoker operate to the satisfaction of Mr. Schmidt.

In March, 1937, Mr. Schmidt ordered the Bardes Company to remove the stoker, which they refused to do. In August, 1937, Mr. Schmidt removed the stoker and controls, storing the same in the basement of Mr. Weaver, and at the same time notified the Bardes Company that it was so stored but was being held as their property and offered to return the same to them.

The Bardes Company refused to take back the stoker and instead began a suit against Mr. Schmidt, and Elgar Weaver, No. 86632 in the Common Pleas Court of Montgomery County, Ohio. The Bardes Company claimed the contract price of $1012.00 for the stoker, controls and installation from Mr. Schmidt and Mr. Weaver was made a party defendant in that suit because the Bardes Company had placed a mechanic's lien on the building and on the land on which the apartment house was situated. This action was filed in 1937, within a very few weeks after the notice from Mr. Schmidt.

The defendant Schmidt answered, setting up the defense that the stoker failed to operate satisfactorily.

The defendant Weaver filed an answer, asking for a cancellation of the mechanic's lien against his property.

After the issues were joined the case came on for trial before one of the judges of the Common Pleas Court and a jury, and resulted in a verdict for the defendants.

Prior to December 26, 1936, Mr. Schmidt sent a statement to the Bardes Company, making an itemized claim against them for $43.25 on account of certain labor and material furnished and paid for, which under the contract for in-

stallation Schmidt claimed was to be paid by the Bardes Company. The Bardes Company very promptly sent check for $8.59, covering freight, which admittedly was its obligation, but it questioned the remainder of the bill. After further correspondence, the Bardes Company, on December 28, 1936, wrote Mr. Schmidt as follows:

"With reference to your invoice dated November 30, we will accept $25.83 of this bill, which covers 150 fire brick, 150 common brick, 2 sacks of cement, 15 lbs. of thermolith and a freight charge of $8.59. You have already received check for $8.59, leaving a balance of $17.24."

No further action was taken by the Bardes Company relative to this amount of $17.24.

Following the entry of final judgment in the first case, the law firm of Matthews, Matthews and Altick, acting for the Bardes Company, on June 19, 1940, wrote Mr. Elgar Weaver, advising that the judgment entry had been approved in Case No. 86632, and, further, that the Bardes Company did not intend to appeal from such judgment. The letter further made a demand on behalf of the Bardes Company that they be permitted to take the stoker, the boiler front and all other property furnished by them at the Bellevue Apartments. The letter also stated that on June 24, 1940, they would have a truck at the Bellevue Apartments for the purpose of removing said property.

Upon receiving this letter Mr. Weaver took the same to his attorneys, Pickrel, Schaeffer & Ebeling. Thereafter several letters passed between counsel on behalf of their respective clients. In a letter from Mr. Weaver's attorneys it was suggested that storage charge should be paid for the 30 months during which the stoker had been stored in the basement of the Bellevue Apartments. In the several letters no mention was made of any lien claimed on the part of Mr. Schmidt.

During the course of the trial in the instant case counsel for Mr. Weaver sought to present in evidence a claimed oral statement made to Mr. Altick, of counsel for plaintiff, advising that Mr. Schmidt was asserting a lien. This proffered evidence, upon objection, was refused, but the record contains a statement of what the witnesses would have testified to. This refusal apparently was upon the theory that there was no legal requirement on the part of Weaver to make any explanation as to why he was holding the stoker.

The Bardes Company, not being able to obtain the stoker under their demand, within a very few days thereafter brought suit against the claimant Weaver, in the nature of a conversion action, and asking judgment in the sum of $1320.00, with interest at 6% from June 22, 1940.

The defendant Weaver filed answer, in which he admitted that on June 22, 1940, plaintiff was the owner of the stoker and other described property, but was not entitled to the right of possession thereof by reason of the fact that defendant was in possession thereof as bailee, the same having been left in his possession for safe keeping and storage by W. F. Schmidt under a claimed lien which the said Schmidt claims for payment on the purchase price in the sum of $43.25. Defendant further averred that he was instructed by W. F. Schmidt not to surrender possession to the plaintiff until his lien was satisfied, and, further, that plaintiff at no time offered to satisfy said lien of W. F. Schmidt

or present to the defendant any release of the same.

By reply the plaintiff denied all averments relative to lien.

After the issues were joined, the instant case came on for trial before a judge of the Common Pleas Court of Montgomery County and a jury, and resulted in a verdict for the plaintiff in the sum of $1000.00 and interest. Motion for new trial was duly filed and overruled, and thereafter the requisite steps were taken whereby the cause was lodged in our Court.

Appellant's assignment of errors is set out under eight separately numbered specifications, as follows:

I. "Errors on the part of the trial court in its charge to the jury, specific and general objections thereto being made after the charge and before the case was submitted to the jury.

A. The Court did not charge that the owner of personal property must also have the right to immediate possession, as well as title, to maintain conversion and the Court did not properly qualify its charge in this respect or state the burden of proof to right of immediate possession as being that of plaintiff.

B. The Court charged that there were no facts to support any possessory lien of W. F. Schmidt and withdrew from the jury any consideration of defendant's defense that right of immediate possession was in W. F. Schmidt and not in the plaintiff.

C. The Court charged that the only significance of the previous trial was that it established Schmidt's right to rescind.

II. The Court was in error in overruling the motion of defendant at the end of the whole case for a directed verdict in his favor on the ground that a good defense had been established of the right to immediate possession did not exist in plaintiff at the time of the alleged conversion.

III. The Court was in error in permitting plaintiff to amend its reply at the end of all the evidence to set up res adjudicata as to Schmidt's possessory lien.

IV. The Court was in error in allowing and giving a Special Charge No. 1 requested by plaintiff.

V. Prejudicial errors of the trial court in rulings on the admission and exclusion of evidence:

A. In permitting the introduction of pictures by plaintiff—Exhibits K, L and M.

B. In refusing defendant right to cross examine and test witness Frazier as to issues of previous trial as to defects in stoker and in refusing defendant right to refer to same in examining witness Rankin.

C. In permitting witness Frazier to testify as to value of stoker on October 1, 1936, and refusing to let witness Rankin testify on the same point.

D. In refusing to permit witness Rankin to testify that a stoker which would not work to the satisfaction of a reasonable man at one location would not work in another location.

E. In refusing to permit witness Pickrel to testify that plaintiff's counsel was informed at the time of the interchange of letters in June 1940 by him that Schmidt was asserting a possessory lien.

F. In refusing to allow stipulation of Mr. Israel, expert on price of cast iron, as to value of cast iron on June 22, 1940.

VI. The verdict of the jury and the judgment of the Court was contrary to law and not substantiated by sufficient evidence.

VII. The verdict of the jury was excessive and not substantiated by sufficient evidence.

VIII. The Court erred in not granting defendant's motion for a new trial and also in not ordering a remittitur as a condition."

Many of these separate assignments are closely related and therefore we do not deem it necessary or expedient to take them up in order. To do so would lead to much repetition. We will, however, in the course of the opinion refer to every principle essential to a determination.

The trial court in its charge to the jury specifically instructed them that there was no evidence supporting any possessory lien of W. F. Schmidt, and withdrew from the jury any consideration of defendant's defense that right of immediate possession was in W. F. Schmidt and not in plaintiff. In legal effect the court's charge required a finding for the plaintiff, leaving the question of the value of the property the only issue to be determined.

There is very little, if any, factual dispute relative to the claimed lien of Mr. Schmidt.

The defendant Weaver testified that when the stoker and its parts were torn down in the basement of the Bellevue Apartments by Schmidt, the latter gave instructions not to permit the Bardes Company to have the stoker until they paid the certain amounts which he had advanced by way of payment of freight charges and material and labor. That later, being the week when the first trial was in progress, Schmidt again instructed him not to permit the Bardes Company to have the stoker until they made settlement with him. The only witness called by plaintiff, aside from the defendant for cross-examination, was Thomas Frazier, who was sales manager and chief engineer for The Bardes Range and Foundry Company. In the cross-examination of Mr. Frazier, correspondence between Mr. Schmidt and the Bardes Company was identified, read into the record and later introduced as exhibits. It was admitted that the freight charges were allowed and check sent to Mr. Schmidt for the amount. It was further admitted that the company acknowledged a balance of $17.24. There is no claim made that this amount was paid. The witness Frazier stated that the Bardes Company intended to allow $17.24 credit against the contract price.

The pertinent portion of §8449 GC, of the Sales Act, reads as follows:

"(1) When there is a breach of warranty by the seller, the buyer may, at his election—
* * *

(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.
* * *

(4) When the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price.

(5) When the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods, as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has

been paid, and with the remedies for the enforcement of such lien to an unpaid seller by section eighty-four hundred and thirty-three."

In the case of **Wilson & Company v The M. Werk Company, 104 Oh St 507,** the Supreme Court had under consideration the provisions of §8449 GC, and in Syllabus 3 recognizes the buyer's lien for the repayment of so much of the purchase price as has been paid.

The record does not disclose the court's reasoning in determining as a matter of law that Schmidt did not have a lien. The trial court in its charge to the jury made the following statement:

"The question of whether or not there were facts in this case which would constitute a lien in favor of Mr. Schmidt and make him the bailee of the Bardes Company, the plaintiff in this case, is a question of law and I have determined that question of law adversely to the defendant and to Mr. Schmidt, and I now say to you that there are no facts in this case which support any lien on the part of Mr. Schmidt which would give him the right to hold this stoker, and, further, if he had no lien to hold it, Mr. Weaver would have no right under Mr. Schmidt to hold it, because if Mr. Schmidt had no lien then Mr. Weaver could not be holding it to protect Mr. Schmidt's lien. So you will give no consideration to that defense, which is set out in defendant's amended answer."

Throughout the record we find that during the presentation of evidence it very frequently occurred that where objections were made the court called counsel to the bench and a discussion was had not in the hearing of the jury or the stenographer, after which a ruling would be made admitting or rejecting testimony. In all probability counsel were advised through some of these discussions as to the court's reasoning on this claimed lien. From the discussion in the briefs of counsel we are led to conclude that the court recognized the legal principle for a possessory lien for any part of the price paid, but determined that the sum of $17.24 was not a part of the purchase price.

In the case of Auto Brokerage Company v Ullrich (N. J.) 131 A 901, the court holds that the purchaser upon rescission has a right to hold the article until the seller restores the purchaser to the status quo.

In the case of Wellington Stove Company v Thomas (La.) 123 So., 410, it is held that where, by a mistake in shipping wrong articles, the buyer has the right to retain the articles shipped until he is paid for the freight.

Also see Williston on Sales, Second Edition, page 530:

"The buyer has a lien on the goods to secure repayment."

It is a debatable question whether or not the Sales Act covered a contract such as is involved in the instant case, which calls for installation, as well as the sale of certain personal property. The courts are divided on the proposition, some holding that the Sales Act is applicable, where others hold that it is a contract for work, labor and material and does not fall within the provisions of the Sales Act. We do not think that under the facts in the instant case it will make any difference, since if it should be determined that there is no statutory lien under the Sales Act there could still be an equit-

able lien under the rules of common law.

Counsel for appellee urge that during the progress of the trial counsel on both sides stated to the court that the case was being presented on the theory of a statutory lien and that this theory must be adhered to on review. In other words, it is argued that appellant can not change the theory of his case after judgment, and that the reviewing court is bound to follow the theory upon which the case was tried.

We recognize this general principle, but do not think it is as broad as claimed by counsel for appellee.

We think the law is well recognized that if under the pleadings and the facts a party is entitled to relief under existing law, such relief will not be denied because counsel are in error in asserting the proper applicable law.

The question suggests itself whether or not the defendant Weaver could avail himself of a claimed lien held by a third person. We are referred to the following cases in support of appellant's defense:

Chasnov v Marlane Holding Company, 244 N.Y.S., 457;

Glenn v Garrison, 17 N.J.L., 1;

Seymour v Peters, 67 Mich., 415; 35 N. W., 62;

Morey v Hoyt, 65 Conn., 516; 33 Atl., 496;

Barwock v Wood, 48 N. C., 306;

George v Pierce, 123 Calif., 172; 55 Pac., 775;

O'Brien v Hillburn, 22 Texas, 616;

Brown v Shaw, 51 Minn., 266; 53 N. W., 633;

Pruitt v Sunn, 151 Ala., 651; 44 So., 659;

Stevens v Gordon, 87 Me., 564; 33 Atl., 27.

All the cases cited have not been available but we have examined the question sufficiently to satisfy us that the possessory lien of a third person may be asserted, upon the principle that it goes to a determination of plaintiff's right of possession.

It is our conclusion that the court was in error in determining as a matter of law that Schmidt did not have a lien on the stoker and other property for at least the amount of $17.24. The record supports the claim that at least this amount was paid out by Schmidt for material and labor which it was the obligation of the Bardes Company to pay.

It is true that the Bardes Company at first denied that it was any part of their contract but afterwards yielded the point and admitted the $17.24 of the total claim. It is also in evidence that they expected to give credit for this amount on the contract price. This it did not do, but on the contrary the Bardes Company sued Schmidt for recovery of the full amount of the original price, $1012.00.

Our conclusions on assignment of error 1-B require a reversal and remand for new trial, and at the same time, by implication at least, is determinative of many of the other assigned errors.

Under the provisions of the Code a reviewing court is required to pass on all errors assigned, and following this mandatory provision, we will briefly consider the remaining errors.

Assignment of error 1-A complains that the court in its charge to the jury failed to instruct that before plaintiff could recover he must have a right to immediate possession of the property involved.

Under the trial court's theory of no lien, there would be no prejudicial error except as we find that the court was in error in determining as a matter of law that there was no possessory lien. Under this situation the claimed error under assignment 1-A is well taken.

Complaint is made under 1-C that the court incorrectly charged that the only significance of the previous trial was that it established Schmidt's right to rescind. We are inclined to think that this limitation was too narrow. The pleadings and journal entry in the first action disclose that the controversy revolved around the question as to whether or not the stoker worked satisfactorily. The defendant Weaver was a party defendant in that action by reason of a mechanic's lien being asserted against him. It is obvious that the stoker was removed on the alleged ground that it did not work satisfactorily. The jury found the issues against the Bardes Company and in favor of Schmidt. There certainly is no question that since the stoker did not operate satisfactorily under test its value would not be as much as if it had worked satisfactorily under test. At least, this was an element to be considered by the jury.

Under assignment of error 2 it is urged that the court was in error in not directing a verdict.

This is a very close question, but since there was a distinct issue raised upon the question of a lien, the jury had a right to determine whether or not it would believe the testimony favorable to defendants. Counsel for the Bardes Company introduced in evidence a number of letters which passed between counsel for the respective parties when the demand for the stoker was made and refused. In these letters no mention was made of the claimed lien of Schmidt. The obvious purpose of this evidence was to controvert the averments in the answer of a possessory lien on the part of Schmidt. It is argued to us, and quite likely was to the jury, that the averments of the answer were a subterfuge. Under the state of the record we find no error in assignment No. 2.

Under assignment No. 3 claim is made that the court permitted plaintiff to amend its reply at the end of all the evidence and set up res adjudicata as to Schmidt's possessory lien. The record discloses that counsel for plaintiff did make request to amend its reply and set up a claim of res adjudicata. It further appears that the amendment was not made, nor did the court in its instructions to the jury present to them the issue of res adjudicata.

The basis for the claim of res adjudicata was that in the first action, wherein the Bardes Company sued Schmidt for the full amount of the contract price, the defendant Schmidt failed to set up a counter claim or setoff. Schmidt defended on the sole ground of nothing due by reason of his rescission of the contract. He might have set up as an additional defense his counterclaim or set-off, but under the law he was not required to do so. This principle is clearly announced not only by the provisions of the Code but also by court pronouncements. We do not deem it necessary to make citations. Apparently counsel for appellee does not now urge that it had the right to plead res adjudicata, but rather urges that the action was not prejudicial for the reason that the amendment to the reply was not actually made, and, further, that the court made no reference to it in its charge to

the jury. The record does not present the issue of res adjudicata.

Under assignment No. 4 it is urged that the court was in error in allowing and giving Special Request No. 1 to the jury before argument. This special request defines conversion. Complaint is made that the instruction leaves out the essential element of right of possession. The instruction does contain the words "without right to do so" in referring to interference with owner's right of dominion and control. While not free from doubt, we would not say that this instruction was erroneous.

Specification No. 5 under six subdivisions complains of the court's ruling on the admission and exclusion of evidence.

Under A it is urged that the introduction of photographs of a stoker of the Bardes Company fully set up and ready for operation should not have been admitted. We find no error under this complaint. It was explained that the pictures were introduced for the purpose of giving the jury an understanding of what a set up stoker looked like.

Under 5-B complaint is made that the court erroneously denied defendant the right to cross-examine witness Frazier as to issues of previous trial as to defects in the stoker, and, further, refusing defendant's right to refer to same in examining witness Rankin. So far as any attempt was made to inquire of Frazier as to the issues of the former trial, or the former testimony of any witness in connection therewith, we determine that the court was correct in not permitting this testimony. Of course, any witness would be inquired of as to anything material that was within his knowledge. In the main the ruling of the court was correct in sustaining objections to questions presented to the witness Rankin. We do think, however, that greater latitude should have been permitted in allowing Rankin to testify as to his knowledge of the condition and value of the stoker. Also it would be permissible to present hypothetical questions, presenting the facts relative to the torn down stoker, which would have a bearing on its market value.

Under 5-C it is urged that the trial court erroneously permitted Frazier to testify as to the value of the stoker on October 1, 1936, and later refusing to let witness Rankin testify on the same point. Under the factual developments, as shown by the record, we do not think that the court erred in permitting witness Frazier to testify to the value of the stoker on October 1, 1936. On cross-examination it was disclosed through this witness that his testimony of value at the present time was in excess of the sale price of the stoker in 1936, and, further, that the original sale price included delivery and installation, which would very materially reduce the net to the Bardes Company. In the re-examination of Frazier, it was sought to bring out that the market value of the stoker in question at the time of the original sale was far in excess of the sales price; and, further, that the low sales price was necessary to meet competition and in order to have a stoker of this type and size in the Dayton territory for demonstration purposes.

We are inclined to think that counsel for appellant should have been given greater latitude in his examination of witness Rankin on this same subject.

Under assignment 5-D complaint is made that the court erred in not permitting witness Rankin to testify that a stoker which would

not work to the satisfaction of a reasonable man at one location would not work in another location. We think this testimony was admissible.

Under subdivision 5-E complaint is made that witness, Pickrel, was not permitted to testify that plaintiff's counsel at the time of the interchange of letters in June, 1940, was orally advised that Schmidt was asserting a possessory lien. We think this evidence should have been permitted as tending to meet plaintiff's claim of subterfuge or after-thought.

Under assignment 5-F it is urged that the court was in error in refusing evidence as to the junk value of cast iron on June 22, 1940. In view of the fact that the record presents evidence that the stoker had no value as such, we think that this evidence should have been permitted.

Assignment No. 6 complains that the verdict of the jury and the judgment of the court was contrary to law and not substantiated by sufficient evidence. This assignment is well taken for the reasons set forth in the earlier part of this opinion.

Under assignment No. 7 complaint is made that the verdict of the jury was excessive and not substantiated by sufficient evidence. In view of the fact that we are reversing and remanding for new trial, we will not pass on this assignment at this time. No doubt the case will be retried on a new record and we prefer not to express an opinion under this assignment for obvious reasons.

Under assignment No. 8 it is complained that the court was in error in not granting defendant's motion for new trial and in not ordering a remittitur as a condition. We find that the motion for new trial contained substantially the same grounds as are set forth in the assignments of error.

Having found prejudicial errors, it necessarily follows that the court was in error in not granting a new trial.

We make no comment as to the claim of remittitur.

The judgment of the trial court will be reversed and cause remanded for new trial. Costs in this court will be adjudged against the appellee.

GEIGER, PJ. & HORNBECK, J., concur.