[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT
This action concerns only the issue of whether an arbitration proceeding of a dispute between the parties should continue.
Smith Barney, Inc. (S.B.I.), the plaintiff, brought this action for injunctive relief to "stay" the arbitration and now moves for summary judgment.
Peter W. Gillies, Executor of the Estate of Dorothy W. Gillies (Gillies), the defendant, counterclaimed seeking an order to S.B.I. "to proceed with arbitration of all those claims" but he has withdrawn that counterclaim.
Facts
The plaintiff in its motion relies only on the facts CT Page 1601 as set out in its "Verified Complaint and the Affidavit of John R. Snyder (Snyder) previously filed."
The facts[1] in that complaint are in pertinent part as follows:
S.B.I. is a registered securities broker/dealer maintaining a principal place of business in New York and a place of business in, inter alia, Hartford, Connecticut.
Defendant is executor of the estate of Dorothy W. Gillies (Dorothy). She maintained an account with S.B.I.'s predecessor, Shearson Lehman Brothers, Inc. (Shearson). On April 18, 1994 Defendant instituted an arbitration proceeding against S.B.I. and one Gregory Hammer at the National Association of Securities Dealers (NASD) by submitting a Statement of Claim and submission agreement. The Statement of Claim contains claims based on certain investments made at Shearson by Dorothy. Defendant seeks damages alleging misrepresentation, unsuitability, failure to supervise and breach of fiduciary duty. [That Statement of Claim was annexed to the Complaint].
S.B.I. received a copy of the Statement of Claim on or about July 8, 1994.
Defendant's claims based on investments purchased on or before April 18, 1988 are ineligible for arbitration pursuant to Section 15 of the NASD Code of Arbitration Procedure. [A copy of that Section 15 was annexed to the Complaint.] Since defendant failed to set forth specifically all investments involved in the Statement of Claim, all investments purchased on or prior to the aforementioned date are included in this Complaint.
[Paragraph 6]
"The following investments are specifically referred to in the Statement of Claim and are ineligible for arbitration pursuant to Section 15:
 Prime Cable Income Partners, purchased for a total of $105,000 on September 25, 1986 and December 5, 1986; CT Page 1602
 Cable TV Fund 12-1986, purchased for $15,000 on October 2, 1986;
 American Income Partners 3-C, purchased for $50,000 on December 28, 1987; and
 Cable TV Fund 14, purchased for $27,000 on February 23, 1988.
The claims based on investments in EQ/Shearson Hotel Properties, Shurgard Growth Fund 17 and Shopco Regional Malls remain eligible for arbitration, and are not the subject of this Complaint." [End of paragraph 6]
"In opening her account with Shearson, Dorothy agreed that New York law would govern any disputes arising from her account, and that any such disputes would be submitted to arbitration, in accordance with the rules of certain specified arbitration fora, including the NASD. [Annexed to the complaint was a Customer [sic] Agreement between Shearson and Dorothy]".
"Dorothy . . . was fully aware of the nature of her investments at the time she purchased each investment."
"[S.B.I.] seeks an order and judgment permanently staying the arbitration of defendant's claims as set forth in paragraph 6 above, on the ground that they are ineligible for arbitration under NASD Code of Arbitration Procedure Section 15."
"Defendant's claims based on investments purchased on or before April 18, 1988 are barred by Section 15 of the NASD Code of Arbitration Procedure, which bars from arbitration any dispute, claim or controversy where six years have elapsed from the occurrence or event giving rise to the dispute, claim or controversy. The purchases of the investments set forth in paragraph 6 above, which are the events giving rise to the respective purported disputes and claims, occurred over six years ago."
"If the NASD arbitration commenced by defendant is permitted to continue, [S.B.I.] will suffer irreparable CT Page 1603 harm."
"[S.B.I.] has no adequate remedy at law."
The Snyder affidavit in pertinent part alleges the following:
I am a member of the Bar of the State of Connecticut and counsel for S.B.I. in this action.
On April 18, 1994, Gillies commenced an arbitration proceeding against S.B.I. and one Gregory Hammer at the National Association of Securities Dealers ("NASD") by filing a Statement of Claim and Submission Agreement. S.B.I. was served with a copy of defendant's Statement of Claim and Submission Agreement. S.B.I. was served with a copy of defendant's Statement of Claim.
The claims stated in the Statement of Claim based on investments purchased on or before April 18, 1988 are ineligible for arbitration pursuant to Section 15 of the NASD Code of Arbitration Procedure.
Along with the Application for Temporary Injunction S.B.I. is filing a Verified Complaint seeking a permanent injunction and judgment permanently staying the arbitration proceedings with respect to the claims asserted in the Statement of Claim based on investments purchased on or before April 18, 1988, since they are barred by NASD Code of Arbitration Procedure Section 15.
S.B.I. will suffer severe and extreme prejudice if the arbitration is not temporarily stayed pending the determination of the Application. The answer to the Statement of Claim is due to be filed on September 20, 1994. If the arbitration is not stayed, Smith Barney will be forced to prepare an answer and defend against claims involving investments that occurred over six years ago. In addition, a hearing on the Statement of Claim while the Application is pending would be a waste of resources and expense for all parties if this Court determines that the claims referred to in the Verified Complaint are ineligible for arbitration and thus must be permanently stayed and dismissed. Those claims constitute sixty percent (calculated on the basis of initial purchase prices) of the CT Page 1604 claims in the Statement of Claim. Preventing the litigation of such stale claims is the exact rationale behind NASD Code of Arbitration Procedure Section 15.
The factual portion of the Statement of Claim is as follows:
"STATEMENT OF CLAIM
I. INTRODUCTION
This is a claim for unsuitability of security transactions, misrepresentations, failure to supervise and breach of fiduciary duty, related to transaction in 1986, 1987 and 1988 between the Respondent's predecessor in interest, Shearson Lehman Brothers, Inc. ("Shearson") and the Claimant's decedent, Dorothy W. Gillies ("Mrs. Gillies"). Respondent, as fiduciary, by and through its registered representative, Gregory Hammer, acted in reckless disregard of the Claimant's decedent's best interests by either failing to obtain said decedent's approval for, or by making economically imprudent recommendations regarding, the transactions complained of.
II. FACTS
Claimant Peter W. Gillies is an attorney at law, and a partner in the law firm of LeBoeuf, Lamb, Greene MacRae. He is a former Insurance Commissioner of the State of Connecticut. Claimant's decedent is his mother, Dorothy W. Gillies, who passed away in December, 1992, at the age of 90.
Shearson and Mr. Hammer managed Mr. and Mrs. Gillies' "nest egg" for a number of years before Mr. Gillies death in 1986. Having extremely limited experience in financial matters as the result of her reliance upon her husband in such affairs, upon the death of her husband, Mrs. Gillies entrusted virtually her entire life's savings to Shearson and Mr. Hammer. Subsequent to her husband's death and prior to the transactions complained of, Mrs. Gillies lived on a very limited income consisting of her husband's Army pension of approximately $170.00/month, social security, and stock dividends, which information was known, or should have been known, by the Respondents. For precise reasons CT Page 1605 yet unknown, beginning on or about May 30, 1986, and ending on or about June 22, 1988, Shearson, by and through Mr. Hammer, liquidated Mrs. Gillies' entire securities portfolio (see Exhibit "A" attached hereto), and invested all her net funds from that liquidation (approximately $300,000.00) in approximately seven (7) separate limited partnerships of a non-liquid and speculative nature. (See Exhibit "B" attached hereto.) The business of these partnerships included cable television, hotels, and real estate. Even though Mrs. Gillies was 84 years of age in 1986, Shearson, by and through Mr. Hammer, invested her money in partnerships where she would not be able to access her principal for a number of years, assuming there would be principal to access. According to the Respondent, between the time of the purchases of the limited partnership interests at a cost of $332,000.00, to the present, the seven (7) or so separate limited partnerships have made distributions totaling $214,165.00 and their market value as of December, 1993 was $41,474.00. (See Exhibit "C" attached hereto.)
Mrs. Gillies died in December, 1992. Upon his appointment as Executor of her estate, the Claimant wrote to the Respondent's predecessor on or about August 18, 1993, setting forth his claims regarding the subject transactions. (See Exhibit "D" attached hereto.) By letter dated August 25, 1993, the Respondent acknowledged the "[c]omplaint" of the Claimant. (See Exhibit "E" attached hereto.) By letter dated November 15, 1993, the Claimant again requested the Respondent to address the claims raised. (See Exhibit "F" attached hereto.) On or about December 3, 1993, the Respondent faxed to the Claimant an itemized list of the subject limited partnership interests, including their (respective) original costs, cumulative distributions, and values. (See Exhibit "C" attached hereto.) According to Exhibit "C", one (1) of the limited partnership's units were [sic] sold in December, 1992 at a loss, and four (4) of the remaining six (6) have ade minimis or zero market value.
III. CLAIM
The Respondent's predecessor in interest and its registered representative acted in reckless disregard of Claimant's decedent's best interest in making the aforesaid CT Page 1606 recommendations and/or in undertaking the aforesaid transactions on her behalf. The speculative investments recommended and/or undertaken by Shearson and Mr. Hammer were unsuitable in light of Mrs. Gillies' age and the nature of her income. By recommending and/or purchasing limited partnership interests with a high initial commission charge, nd Mr. Hammer considered their own best interests rather than that [sic] of Mrs. Gillies.
In allowing these investments to be made, Shearson failed to adequately supervise its registered representative, Mr. Hammer.
Shearson and Mr. Hammer were at all times during the relationship with Mrs. Gillies, her fiduciaries, and they each breached that fiduciary duty through their reckless and/or intentional acts as aforesaid.
If Shearson and/or Mr. Hammer made recommendations to Mrs. Gillies, they each misrepresented to her that the subject limited partnership investments were appropriate for her and that they would ultimately be successful.
IV. DAMAGES
WHEREFORE, the Claimant requests:
 1. Rescission of the limited partnerships and restoration of the consideration paid in an amount of approximately $300,000.00;
 2. Punitive damages in such amounts as the panel may consider appropriate;
 3. Interest on any damages awarded from the date of the investment; and the date of the investment; and
4. Costs and reasonable attorney's fees."
The Defendant has filed an answer and a memorandum in opposition but has not filed "opposing affidavits and other available documentary evidence" under P.B. § 380. The court does not know if Dorothy's account was ever CT Page 1607 closed.
The court does not know in what name the securities mentioned in paragraph 6 of Snyder's affidavit were registered.
The court can find only that one security was sold, April 26, 1988. The court does not know when, if at all, any of the other securities were sold and at what price. The Statement of Claims is evidence that the seven (7) investments were purchased for $332,000; have distributed $214,165; and are presently worth $41,474. From this the court concludes there has been but one sale. But plaintiff complains here about only four (4) investments. Those four were purchased before April 1988.
Although defendant here raises issues of "course of conduct" and duty of continuing supervision, in the "Claim" section of the Statement of Claim he complains only about S.B.I. "recommending and/or purchasing" the securities and as to the supervision he only states that S.B.I. "failed to . . . supervise its . . . representative, Mr. Hammer." He does not complain that Hammer and S.B.I. kept or recommending keeping these securities beyond April of 1988.
Section 15 of the NASD Code of Arbitration Procedure reads as follows:
Time Limitation on Submission
 Sec. 15 No dispute, claim or controversy shall be eligible for submission to arbitration under this Code when six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction. [Amended effective October 1, 1984.]
The entire agreement "shall be governed by the laws of the State of New York." Section 13 of Client's Agreement. CT Page 1608
Law
Summary judgments may be had for injunctions. Practice Book § 379. There are no disputed material, relevant facts. We are down to a question of law. The issue is whether the plaintiff's argument that four (4) of Gillies' claims in the arbitration are time barred is to be decided by this court rather than the arbitrator.
The NASD limitation is six years but it is six years "from the occurrence or event giving rise to the act or dispute claim or controversy." That limitation is by reference, part of the original contract — the Client's Agreement — which says: "[A]ny controversy arising out of or relating to my accounts, to transactions with you, your officers, directors, agents and/or employees for me or to this agreement or the breach thereof shall be settled by arbitration in accordance with the rules [sic] then in effect of "[NASD or the New York Stock Exchange, Inc.]
Defendant's claims in regard to the four securities at issue are all based on occurrences or events which happened more than six years before he filed his arbitration claim.
No party is required to arbitrate a dispute unless he has agreed to do so. Marsala v. Valve Corp. of America,157 Conn. 362, 365.
Is the NASD Section 15 a "substantive eligibility requirement" or "a procedural statute of limitations"?
That issue is to be decided by the law of the State of New York which the parties chose in their agreement. This is so even though there is a Federal Arbitration Act9 U.S.C.A. § 4 which might cover the matter. Volt InformationSciences v. Board of Trustees of Leland Stanford, Jr.Univ., 489 U.S. 468, 476-479 (1989).
New York has ruled that the NASD Section 15 is not a statute of limitations but a substantive eligibility requirement. Matter of Prudential Bache Sec. v. Archard,179 App.Div.2d 652, 579 N.Y.S.2d 587 N.Y.S.2d 906, 600 N.E.2d 633. CT Page 1609
Under New York law if the issue is the applicability of a statute of limitations the arbitration panel will decide it and if it is the applicability of a substantive eligibility requirement the court will decide it. Merrill,Lynch, Pierce, Fenner Smith v. DeChaine, 600 N.Y.S.2d 459
(A.D. 1 Dept. 1993).
The Archard court held claims such as these four were "time barred, and may not be submitted to arbitration with NASD (NASD Code of Arbitration Procedure § 15 . . .)". This court follows that law.
The arbitration as to the four claims in issue may not proceed because as a matter of law the parties' agreement declares them to be ineligible for submission to arbitration under Section 15 of the NASD code.
Summary judgment shall enter for plaintiff and the arbitration is stayed as to the pertinent four claims.
N. O'Neill, J.